Allan G. CHARLES, M.D., Marvin Rosner, M.D., David Zbaraz, M.D. and Martin Motew, M.D., and on behalf of all others similarly, situated, Plaintiffs,

v.

Bernard CAREY, State's Attorney for the County of Cook, Tyrone C. Fahner, Attorney General of the State of Illinois, their agents, successors and all others similarly situated and Byron Francis, M.D., Acting Director of Public Health, State of Illinois, Defendants.

The HOPE CLINIC FOR WOMEN, LTD., an Illinois corporation, Hector N. Zevallos, M.D., National Health Care Services of Peoria, Inc., an Illinois corporation, Arthur C. Watson, Jr. M.D., and Robert C. Steptoe M.D., Plaintiffs,

v.

Tyrone C. FAHNER, Attorney General of the State of Illinois and Bernard Carey, State's Attorney of Cook County, Illinois, Defendants.

Nos. 79 C 4541, 79 C 4548.

United States District Court,
N.D. Illinois, E.D.

July 14, 1983.

Lois Lipton, R. Peter Carey, Merle L. Royce, II, Prentice H. Marshall, Jr., Chicago, Ill., for plaintiff Charles et al.; Roger Baldwin Foundation of ACLU, Inc., Chicago, of counsel.

Carol Kipperman, Chicago, Ill., Frank Susman, St. Louis, Mo., for plaintiffs Hope Clinic, et al.

Richard M. Daley, State's Atty., c/o Robert Tonos, Neil Hartigan, Atty. Gen., c/o Kathleen Kreisel, Chicago, Ill., for defendants.

Thomas J. Marzen, Maura Quinlan, Americans United for Life Legal Defense Fund, Chicago, Ill., for intervening defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge:

For decision before me today is Plaintiffs' Renewed Motion for Preliminary Injunction. This motion seeks relief regarding certain specified sections of S.B. 47, the Illinois Abortion Law of 1975, as amended. A preliminary injunction has already been issued concerning major portions of the legislation as the result of the orders issued by Judge Flaum (Memorandum Opinion, November 16, 1979) and the Seventh Circuit Court of Appeals (*Charles v. Carey*, 627 F.2d 772 (7th Cir.1980)).[1]

The standard which governs my decision is clear. "To obtain preliminary injunctive relief ..., the plaintiffs must demonstrate

1. Hereinafter referred to as *Charles v. Carey.*

that there is a reasonable likelihood of success on the merits, that they lack an adequate remedy at law, that irreparable harm to the plaintiffs outweighs any harm to the defendants, and that issuance of the injunction would serve the public interest." *Charles v. Carey*, 627 F.2d at 776. Plaintiffs will be considered to have shown their likelihood of success on the merits if restrictive state regulation of abortion is not supported by a compelling state interest. *City of Akron v. Akron Center for Productive Health, Inc.*, —— U.S. ——, ——, 103 S.Ct. 2481, 2490, 76 L.Ed.2d 687 (1983).[2] *See also Charles v. Carey*, 627 F.2d at 777.[3]

Plaintiffs argue that these standards are met and a preliminary injunction should issue with regard to the following statutory provisions: sections 2(6), 2(8), 2(9), 3.1(A), 3.1(B)(1)(a), 3.1(B)(1)(b), 3.2(A)(1)(a), 3.5(1), 6(3), 6(7), 10, 11(e), 11(f) and 12. Each shall be discussed in turn.

## I. The Definitional Sections: Sections 2(6), 2(8) and 2(9)

■ Section 2 of the Act sets forth numerous definitions of statutory terms. Plaintiffs first challenge sections 2(8) and 2(9) which define, respectively, "Human being," and "Fetus." In full, these sections provide:

(8) "Human being" means the individual from fertilization until death.

(9) "Fetus" and "unborn child" each mean a human being from fertilization until birth.

Plaintiffs argue that these two sections incorporate the State's view of life as beginning at fertilization, a view which the Supreme Court has rejected.

**2.** Hereinafter referred to as *Akron*.

**3.** As the Seventh Circuit explained: "The threshold question whether there is a 'burden' or 'direct inference' in the pregnancy termination decision requires the plaintiff merely to show the requisite degree of interference. If the interference is sufficiently substantial and not *de minimis,* the State has to show the compelling basis for the law, that is, that the burden is not 'undue' or unjustifiable."

Other statutory sections have been stricken by this Court, the Seventh Circuit Court of Appeals, and the Supreme Court for the reason set forth by plaintiffs. In *Akron* the Court found unconstitutional that subsection of the ordinance which required the attending physician to orally inform a pregnant woman "That the unborn child is a human life from the moment of conception ..."[4] As the Court explained, that "requirement [is] inconsistent with the Court's holding in *Roe v. Wade* that a State may not adopt one theory of when life begins to justify its regulation of abortions. See 410 U.S. [113, 159–162], [93 S.Ct. 705, 729, 731]"— U.S. at ——, 103 S.Ct. at 2500. A similar provision in the Illinois Statute has been enjoined by this Court. Section 3.5(2).

Likewise, the Seventh Circuit ordered that a preliminary injunction be issued as to sections 2(10) and 11(d) of the Illinois law, stating:

... use of the term "abortifacient" in describing certain birth control methods forces the physician to act as the mouthpiece for the State's theory of life. In this way, section 11(d) is merely a milder version of the "informed consent" provision of section 3.5(2), enjoined by the district court, requiring, among other things, that the patient be told that "[t]he State ... wants you to know that in its view the child you are carrying is a living human being ..."

*Charles v. Carey*, 627 F.2d at 789.

There can be no question that sections 2(8) and 2(9) are written so as to espouse the State's theory of life. A human being is understood, in common parlance, to be a living person. Thus, to say that an individ-

**4.** The subsection further provided, "... and that there has been described in detail the anatomical and physiological characteristics of the particular unborn child at the gestational point of development at which the abortion is to be performed, including, but not limited, to appearance, mobility, tactile sensitivity, including pain, perception or response, brain and heart function, the presence of internal organs and the presence of external members." *Akron,* —— U.S. at ——, n. 5, 103 S.Ct. at 2489 n. 5.

ual at fertilization is a human being, is to say that life begins at fertilization, a theory clearly eschewed by the Supreme Court. Further, there can be no reason offered by the State as to why this definition, or its equivalent, is necessary to any constitutional purposes of the Act. Because section 2(9) incorporates the term "human being" into its definition of fetus, it suffers from the same constitutional infirmities. The plaintiffs have shown a reasonable likelihood that section 2(8) and 2(9) are unconstitutional.[5]

■ Plaintiffs next challenge Section 2(6) which defines "abortion":

(6) "Abortion" means the use of any instrument, medicine, drug or any other substance or device to terminate the pregnancy of a woman known to be pregnant with intent to cause fetal death.

Plaintiffs argue that because this section incorporates a derivative of the impermissible term "fetus"—"fetal death"—it also must fall.

I cannot agree. My refusal to allow "fetus" to be statutorily defined in terms of a "human being" does not mean that either "fetus" or "fetal death" are terms which cannot be understood, absent statutory definition. The terms, as used in 2(6) are *not* "so devoid of meaning that reasonable persons are deprived the opportunity to conform their conduct to the law." *Charles v. Carey*, 627 F.2d at 788, citing *Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979). Although the Seventh Circuit opinion stated the fol-

lowing in a bracketed passage at page 788 "although the use of the term 'death' in conjunction with the term 'fetal' may present problems not briefed here," it is my view that "fetal death" is not impermissibly vague.

Death has been variously defined as "a permanent cessation of all vital functions," "the passing or destruction of something inanimate," and "extinction." *Webster's New Collegiate Dictionary*, 1977 Edition. Whether death in this context is viewed as the destruction of the fetus, or as the extinction of the fetus, or as the permanent cessation of the fetus' capacity for future development, the plain meaning of the statute is manifest. The section is not rendered unconstitutionally vague and no injunction shall be entered as to it.[6]

II. *The Duties of the Physician Who is to Perform the Abortion: Sections 3.1, 3.2(A)(1)(a), and 3.5(1)*

■ Sections 3.1, 3.2(A)(1)(a) and 3.5 set forth certain duties to be fulfilled by the doctor who is to perform an abortion. Section 3.1(A) makes it a class 2 felony for a physician to perform an abortion if he "intentionally and knowingly" ignores the statutory requirement of first determining "in his best clinical judgment, [that] the abortion is necessary."[7] Section 3.1(B) requires that the physician who is to perform the abortion and the woman upon whom it is to be performed have a private consultation "in a place, at a time and of a duration reasonably sufficient to enable the physician to determine whether, based upon his best clinical judgment, the abortion is nec-

---

5. Section 6(7) is thus also rendered unconstitutional. Although the thrust of this section may be permissible, in that it apparently attempts to fill what would otherwise be a void in the cited statute, this section must be redrafted. The definition of "human being" is vital to a meaningful comprehension of section 6(7), but no valid definition of that term now remains in the statute.

6. For the same reasons, the remaining portions of section 10 also withstand challenge. The only argument currently raised by plaintiffs with regard to these is that the terms "fetal" and "unborn children" are unconstitutionally vague, once section 2(9) is deemed unconstitutional.

Because I do not find this argument compelling, and believe the section is not devoid of meaning, I find that plaintiffs have not established a likelihood of success as to this section. Of course, the preliminary injunction entered previously as to certain subparts of section 10 remains in effect.

7. Plaintiffs have previously challenged section 3.1(A) on the grounds that it is unconstitutionally vague and could be interpreted to forbid "elective" abortions. That argument was rejected by both this Court (Memorandum Opinion, Nov. 16, 1979, pp. 14–15), and the Court of Appeals (627 F.2d at 786–787). It is not raised again here.

essary." The basis for the judgment of necessity is to be recorded on a form by the doctor. § 3.1(B)(1)(b). Exceptions and penalties are also delineated. § 3.1(B)(2)–(3).

Section 3.2 is the "Informed Consent" provision. The Seventh Circuit has specifically upheld the introductory paragraph which states:

(A) No abortion shall be performed except with the voluntary and informed consent of the woman upon whom the abortion is to be performed.

*See Charles v. Carey*, 627 F.2d at 783. The correctness of this ruling was affirmed by the Supreme Court in *Akron*. — U.S. at —, 103 S.Ct. at 2499.

Subpart (1)(a) of section 3.2 sets forth the requisites for a finding of "voluntary and informed" consent. As the section originally stood, particular information was to be given to the woman, "by the physician who is to perform the abortion," "at least 24 hours before the abortion." The required information included a true copy of her pregnancy test result (§ 3.2(A)(1)(a)); the name of the physician who will perform the abortion (§ 3.2(A)(1)(a)(i)); the medical risks associated with the particular abortion procedure to be employed (§ 3.2(A)(1)(a)(ii)); the probable gestational age of the fetus at the time the abortion is to be performed (§ 3.2(A)(1)(a)(iii)); and certain printed information, as described in section 3.5 (§ 3.2(A)(1)(a)(iv)).[8] Section 3.5(1) provides for materials describing "public and private agencies and services available to assist a woman through pregnancy, upon childbirth and while the child is dependent, including reputable adoption agencies." Section 3.5(2), which has been enjoined, had called for materials describing "the probable anatomical and physiological characteristics of the fetus at the various gestational ages ... including any relevant information on the possibility of fetal survival." A paragraph was to appear in the prepared materials which said,

in part, "The State of Illinois wants you to know that in its view the child you are carrying is a living human being whose life should be preserved. Illinois strongly encourages you not to have an abortion but to go through to childbirth ..." § 3.5(2).

In addressing the foregoing provisions, plaintiffs first argue that section 3.2(A)(1)(a), regarding "informed consent," must be enjoined in its entirety. According to plaintiffs, *Akron* teaches that this approach should be followed, rather than the clause by clause, subpart by subpart analysis undertaken by this Court and the Seventh Circuit to date.

Plaintiffs' reading of *Akron* in this issue is eminently correct. As in the instant case, one portion of the Akron city ordinance stated that a woman must be "informed by her attending physician of the following facts ..." § 1870.06(B), — U.S. at ——, 103 S.Ct. at 2489 n. 5. The ordinance then listed seven "facts," just as the Illinois statute lists four. The Supreme Court declared it unconstitutional to require that the "physician performing the abortion, or for that matter any physician" be the person who must provide the counselling and information necessary to a woman's informed consent. *Id.* at ——, 103 S.Ct. at 2501. The Court also found certain of the enumerated "facts" objectionable. *Id.* at —— – ——, 103 S.Ct. at 2499–2501.

Not all of the facts, however, met this fate; indeed, some were deemed "certainly ... not objectionable." *Id.* at —— n. 37, 103 S.Ct. at 2501 n. 37. Despite this approval, the Court specifically refused to sever and save the permissible subparts because of the overarching unconstitutional requirement that all of the information be given by the attending physician. *Id.*

The statutory structure of section 3.2(A)(1)(a) cannot be distinguished from that of the ordinance before the Supreme Court in *Akron*. Plaintiffs have therefore

---

**8.** The following clauses and subparts of section 3.2(A)(1)(a) have already been preliminarily enjoined: "with a true copy of her pregnancy test result"; "by the physician who is to perform her abortion"; "and the woman is provided, at least 24 hours before the abortion"; subpart (iii); and subpart (iv), except to that extent that it incorporates 3.5(1).

succeeded in establishing the likely unconstitutionality of this entire provision.

■ Using the same analysis, a similar conclusion must be reached regarding section 3.5(1). The Supreme Court reviewed an analogous substantive provision in *Akron* and implied that section 3.5(1), in another context, would not offend the Constitution. *Id.* However, the information provided for in section 3.5(1) was intended by the drafters of the Illinois act to be distributed to a woman by the physician who would perform the abortion. The overall scheme, therefore, is unconstitutional, and must be enjoined.

Moreover, although section 3.5(1) could arguably stand on its own and does retain independent meaning, even without the reference to it in section 3.2(A)(1)(a)(iv), it cannot be said with any certainty that the Illinois legislature would have enacted section 3.5(1) entirely separate from the context in which it was originally envisioned. In these circumstances, plaintiffs have established a reasonable likelihood that section 3.5(1) is unconstitutional. *Id.* at —— n. 45, 103 S.Ct. at 2504 n. 45.

■ Plaintiffs next suggest that section 3.1 is infirm because it includes a "same doctor" requirement such as that stricken by the Supreme Court in *Akron*. Plaintiffs note that the Seventh Circuit also expressed some doubts about section 3.1(B)(1)(a) for just this reason. *Charles v. Carey*, 627 F.2d at 787, n. 23.

Analysis of section 3.1 must begin with the recognition of an important distinction between the attending physician's judgment that the woman has offered her "informed consent" and his "best clinical judgment [that] the abortion is necessary."

The Supreme Court has made clear that the physician who is to perform the abortion need not *himself* supply the woman with the information necessary to ensure that her decision is an informed one. *Akron*, —— U.S. at ——, 103 S.Ct. at 2501. In fact, such information could be supplied by a non-physician. *Id.*

However, the Court expressly said that "[i]t remains the primary responsibility of the physician to ensure that appropriate information is conveyed to his patient, depending on her particular circumstances." *Id.* at ——, 103 S.Ct. at 2500. "Consistent with its interest in ensuring informed consent, a State may require a physician to make certain that his patient understands the physical and emotional implications of having an abortion." *Id.* at ——, 103 S.Ct. at 2501. "A state may define the physician's responsibility to include verification that adequate counselling has been provided and that the woman's consent is informed." *Id.* at ——, 103 S.Ct. at 2502.

These passages make clear that the attending physician may constitutionally be required to ultimately assure *himself* that the woman has made an "informed consent," even though the initial steps of informing the woman may be taken by another person, including a non-physician.

Given this, it is hard to understand how it could be unconstitutional for a State to require the physician who is to perform the operation to assure himself that in his *own* best clinical judgment, the abortion is necessary. If a doctor cannot avoid personally reviewing an area which in relative terms is less complicated and less important, because it can be addressed by a non-physician, he certainly could not avoid review of the more critical and demanding medical judgment that the abortion should be performed. The *Akron* Court summarized, "[We do not] imply that a physician may abdicate his essential role as the person ultimately responsible for the medical aspects of the decision to perform the abortion." *Id.*

Finally, while it is true that the two-doctor concurrence rule was found unconstitutional, *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), this does not render all of section 3.1 similarly unconstitutional. The fact that the doctor who is to perform the abortion need not have a second doctor concur in the decision that it is medically necessary does not mean that the performing doctor need never himself

reach such a conclusion. *Bolton* suggested just the opposite: "The statute's emphasis, as has been repetitively noted, is on *the attending physician's* 'best clinical judgment that an abortion is necessary.' That should be sufficient." *Id.* at 199, 93 S.Ct. at 751 (emphasis supplied).

For the foregoing reasons, I conclude that plaintiffs have not established a likelihood of proving either section 3.1(A) or 3.1(B)(1)(b) unconstitutional. These provisions merely require the attending physician to himself establish that in his best clinical judgment the abortion is necessary, (§ 3.1(A)) and to then record his basis for that judgment (§ 3.1(B)(1)(b)).[9]

■ Section 3.1(B)(1)(a) presents a different issue. It both requires the performing physician to "consult" with the woman and dictates the procedures which he must go through before making his determination that the abortion should take place. Arguably, these factors run afoul of the *Akron* decision. In the context of "informed consent" provisions, the Supreme Court found favor with a section that "properly [left] the precise nature and amount of this disclosure to the physician's discretion and 'medical judgment.'" *Akron,* — U.S. at —, 103 S.Ct. at 2501. In contrast, the Court found "decisive" a section's objectionable "intrusion upon the discretion of the pregnant woman's physician," and had it stricken. *Id.* Also, as discussed previously, the Court frowned upon the requirement that the doctor be forced to himself fully discuss certain information with the woman. Finally, the defendants have stipulated to the unconstitutionality of section 3.1(B)(1)(a), under the dictates of *Akron.* In these circumstances, plaintiffs have shown that they are likely to prevail as to section 3.1(B)(1)(a), and it shall be enjoined.

9. It has been clearly established that records of this type which do not infringe on the woman's privacy may be required. *See Planned Parenthood of Cent. Mo. v. Danforth,* 428 U.S. 52, 80–81, 96 S.Ct. 2831, 2846, 49 L.Ed.2d 788 (1976).

### III. *Provisions Containing Unconstitutionally Vague Terms: Sections 6(3), 11(f), and 12*

■ Plaintiffs have called to the Court's attention several provisions which contain what plaintiffs believe to be unconstitutionally vague terms.

Section 6(3) makes it a Class 1 felony for any person to "use or sell any fetus or premature infant *aborted alive* for any type of scientific, research, laboratory or other kind of experimentation either prior to or subsequent to any abortion procedure except as necessary to protect or preserve the life and health of such premature infant aborted alive ..." (emphasis supplied).

Plaintiffs contend, and I agree, that the clause underlined above renders the section void for vagueness. The Seventh Circuit refused to sanction the analogous term "human being aborted alive" found in section 6(2), also a criminal provision. The Court found nothing to assist it in determining the meaning of "aborted alive": "The meaning of the term 'alive' could include only the most minimal of life signs in a nonviable fetus or it could be limited to the capability of sustained survival." *Charles v. Carey,* 627 F.2d at 791. The statute therefore contemplates the imposition of a criminal penalty although it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The language is so indefinite that it would encourage arbitrary and erratic convictions. The provision is therefore void for vagueness. *Colautti v. Franklin,* 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979). Plaintiffs have shown their likelihood of success with regard to section 6(3).[10]

■ The same vagueness problems plague section 12. Pursuant to that provision, a pathologist is required to report any

10. The offending language of section 6(3) has withstood attack previously, *see Wynn v. Scott,* 449 F.Supp. 1302, 1322 (N.D.Ill.1978), but *Wynn* preceded the Circuit Court's decision in *Charles v. Carey,* and did not address the argument relied upon here.

evidence of "live birth" or of "viability." The first of these terms is vague for the reasons expressed above. The second was found unconstitutionally vague and over-broad in the initial preliminary injunction order issued by this Court. Section 12, like section 6(3), carries criminal penalties and cannot be allowed to stand as currently drafted. Plaintiffs have established a reasonable likelihood that section 12 is unconstitutional.

 Finally, section 11(f) imposes a criminal penalty for "[a]ny person who intentionally, knowingly or recklessly performs an *abortion procedure* upon a woman who is not pregnant" (emphasis supplied). Plaintiffs assert that the clause "abortion procedure" is also unconstitutionally vague. The Seventh Circuit suggested this in its opinion, *Charles v. Carey*, 627 F.2d at 789 n. 30, and I agree. Certain medical procedures employed by physicians can be used for both abortion and non-abortion reasons. A doctor should not need to fear criminal charges when employing these techniques on nonpregnant women as part of needed tests or for other legitimate purposes. Thus, while the probable intended goal of stopping fraudulent abortions is a valid one, the plaintiffs have established a reasonable likelihood that section 11(f) is unconstitutional, as now drawn.

### IV. *Privacy Guarantees: Section 11(e)*

The last provision challenged by plaintiffs in this action is section 11(e). This section requires any doctor who diagnoses a woman as having complications resulting from an abortion to "report the patient's name ... to the Department [of Public Health, State of Illinois]." Plaintiffs rightfully object that this provision would damage the privacy rights of a woman who has chosen to have an abortion, and could infringe upon her constitutionally protected right to choose to undergo such a procedure. *See Danforth, supra,* 428 U.S. at 79–81, 96 S.Ct. at 2846. *See also Wynn v. Scott,* 449 F.Supp. 1302, 1328 (N.D.Ill. 1978). Plaintiffs have thus established a reasonable likelihood that section 11(e) is unconstitutional.

### V. *Conclusion*

With respect to those sections of the law for which plaintiffs have established at least a reasonable likelihood of success on the merits, they also have established that they have no adequate remedy at law and will be irreparably harmed if the preliminary injunction does not issue; that the threatened injury to plaintiffs outweighs the threatened harm a preliminary injunction may inflict on defendants; and that the issuance of a preliminary injunction will serve the public interest.

Accordingly, plaintiffs' renewed motion for a preliminary injunction is granted with respect to sections 2(8), 2(9), 3.1(B)(1)(a), 3.2(A)(1)(a), 3.5(1), 6(3), 6(7), 11(e), 11(f), and 12. It is denied as to sections 2(6), 3.1(A), 3.1(B)(1)(b), and 10.

It is so ordered.