DIAMOND ET AL. *v.* CHARLES ET AL.

No. 84–1379.   Argued November 5, 1985—Decided April 30, 1986

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, POWELL, and STEVENS, JJ., joined, and in Part I of which BURGER, C. J., and REHNQUIST and O'CONNOR, JJ., joined. O'CONNOR, J., filed an opinion concurring in part and concurring in the judgment, in which BURGER, C. J., and REHNQUIST, J., joined, *post*, p. 71. WHITE, J., concurred in the judgment.

*Dennis J. Horan* argued the cause for appellants. With him on the briefs were *Victor G. Rosenblum, Edward R. Grant,* and *Maura K. Quinlan.*

*R. Peter Carey* argued the cause for appellees. With him on the brief were *Colleen K. Connell, Frank Susman, Janet Benshoof,* and *Nan D. Hunter.**

*Briefs of *amici curiae* urging reversal were filed for the United States by *Acting Solicitor General Fried, Acting Assistant Attorney General Willard, Deputy Assistant Attorney General Kuhl, John F. Cordes,* and *John*

Justice Blackmun delivered the opinion of the Court.

Appellant Eugene F. Diamond is a pediatrician engaged in private practice in Illinois. He seeks to defend before this Court the constitutionality of four sections of the Illinois Abortion Law of 1975, as amended.[1] These sections impose criminal liability for the performance of an abortion under certain circumstances, and, under other circumstances, require that the woman be provided with particular abortion-related information. The State of Illinois has chosen to absent itself from this appeal, despite the fact that its statute is at stake. Because a private party whose own conduct is neither implicated nor threatened by a criminal statute has no judicially cognizable interest in the statute's defense, we dismiss the appeal for want of jurisdiction.

M. Rogers; for the Catholic League for Religious and Civil Rights by *Steven Frederick McDowell;* and for Senator Gordon J. Humphrey et al. by *Robert A. Destro* and *Basile J. Uddo.*

Briefs of *amici curiae* urging affirmance were filed for the Attorney General of New York by *Robert Abrams, pro se, Robert Hermann,* Solicitor General, *Rosemarie Rhodes,* Assistant Attorney General, and *Lawrence S. Kahn, Sanford M. Cohen,* and *Martha J. Olson,* Assistant Attorneys General; for the American Medical Association et al. by *Benjamin W. Heineman, Jr., Carter G. Phillips, Newton N. Minow, Jack R. Bierig, Stephan E. Lawton, Joel I. Klein, Joseph A. Keyes, Jr.,* and *Ann E. Allen;* for the Center for Constitutional Rights et al. by *Anne E. Simon, Nadine Taub, Rhonda Copelon,* and *Judith Levin;* for the National Abortion Rights Action League et al. by *Lynn I. Miller;* for the National Organization for Women et al. by *Diane E. Thompson;* and for Planned Parenthood Federation of America, Inc., et al. by *Dara Klassel* and *Eve W. Paul.*

Briefs of *amici curiae* were filed for the Women Lawyers' Association of Los Angeles et al. by *Susan R. Schwartz, Carol Boyk, Judith Gordon,* and *Lorraine Loder;* for the Unitarian Universalist Association et al. by *Madeline Kochen;* for Senator Bob Packwood et al. by *Laurence H. Tribe* and *Kathleen M. Sullivan;* and for Susan Bandes et al. by *Arthur Kinoy.*

[1] 1975 Ill. Laws, Pub. Act 79–1126, as amended, now codified as Ill. Rev. Stat., ch. 38, ¶¶ 81–21 to 81–34 (1983). The 1975 Act was passed over the Governor's veto. Substantial portions of it already have been held to be unconstitutional. See, *e. g., Wynn* v. *Scott,* 449 F. Supp. 1302 (ND Ill. 1978), aff'd *sub nom. Wynn* v. *Carey,* 599 F. 2d 193 (CA7 1979).

# I

On October 30, 1979, over gubernatorial veto, the Illinois Legislature amended the State's 1975 Abortion Law to provide for increased regulation. 1979 Ill. Laws, Pub. Act 81–1078. That very day appellees, four physicians who provide obstetric, gynecologic, and abortion services in Illinois, filed a class action in the United States District Court for the Northern District of Illinois. They alleged a deprivation of rights in violation of 42 U. S. C. § 1983 by the Illinois officials charged with enforcing the Abortion Law.[2] Appellees sought declaratory and injunctive relief.[3]

The next day, the District Court certified the plaintiff class and temporarily restrained enforcement of the entire statute. On November 8, appellant Diamond filed a motion to intervene as a party defendant, either permissively or as of right, and to be appointed guardian ad litem for fetuses who survive abortion.[4] The motion for intervention professed to be

---

[2] The defendants named in the complaint were the Attorney General of the State and the Director of the Illinois Department of Public Health, each in his official capacity, and the State's Attorney of Cook County, in both his official capacity and as representative of a class consisting of the State's Attorneys in all the counties of the State of Illinois. A suit against a state officer in his official capacity is, of course, a suit against the State. See *Kentucky* v. *Graham*, 473 U. S. 159, 165–166 (1985). The District Court certified a defendant class of State's Attorneys. *Charles* v. *Carey*, Civ. No. 79C 4541 (Oct. 31, 1979).

[3] On the same day another and similar action was filed in the same court by three other Illinois obstetrician-gynecologists and two Illinois clinics that provide abortion services. The two suits were consolidated by court order on Nov. 14, 1979.

[4] Doctor Diamond's motion to intervene and for appointment of guardian was joined by Doctor Jasper F. Williams and David K. Campbell. Doctor Williams, a physician engaged in private practice in Illinois, in the alternative sought appointment as guardian ad litem for unborn children subject to abortion. We are advised that Doctor Williams died on April 15, 1985, after the filing of the notice of appeal to this Court. No one has been substituted for him. Mr. Campbell, who sought intervention as the spouse of a woman of childbearing age, did not file or join a notice of appeal to this Court.

based on Doctor Diamond's conscientious objection to abortions, and on his status as a pediatrician and as a parent of an unemancipated minor daughter.[5]

Over appellees' objection, the District Court granted Diamond's motion to intervene.[6] The District Court did not indicate whether the intervention was permissive or as of right, and it did not describe how Diamond's interests in the litigation satisfied the requirements of Federal Rule of Civil Procedure 24 for intervenor status. The court denied the guardianship motion.

On November 16, the District Court entered a preliminary injunction against a number of sections of the Abortion Law, including §§ 6(1) and 6(4).[7] These sections prescribe the

---

[5] Diamond claimed that under the Abortion Law as a whole fewer abortions would be performed, and that those performed in accordance with the Abortion Law would be designed to preserve the life of aborted fetuses, resulting in more live births. Diamond also rested his motion for intervention on § 13 of the Abortion Law, which provides that a physician who refuses to perform abortions based on conscientious objections will not be subject to liability. He relied, furthermore, on § 11(1), to the effect that violations of the Abortion Law constitute unprofessional conduct, and on § 3.3, which provides for parental consultation.

[6] Although the motion to intervene was on behalf of Doctor Diamond, Doctor Williams, and Mr. Campbell, see n. 4, *supra*, the District Court granted leave to intervene to Americans United for Life Legal Defense Fund, counsel for the intervenors below and for Diamond before this Court.

[7] The preliminary injunction also applied to the following sections: § 2(2) (defining "viability"); § 3.3 (parental consultation); § 3.4 (spousal consultation); § 3.5(2), in part (the portion requiring that the patient be told, *inter alia:* "The State of Illinois wants you to know that in its view the child you are carrying is a living human being whose life should be preserved. Illinois strongly encourages you not to have an abortion but to go through to childbirth"); § 4 (abortion subsequent to first trimester); §§ 5(1), (2), and (3) (definition of "viability"); § 9 (prohibition of saline amniocentesis after first trimester); § 10(i) (certification as to nonviability or as to medical indicators for abortion when fetus was viable); § 10(j) (reporting requirements for saline amniocentesis); § 10(*l*), in part (the reporting requirement as to the basis for a judgment concerning the existence of a medical emergency); and

standard of care that must be exercised by a physician in performing an abortion of a viable fetus,[8] and of a possibly viable fetus.[9]   A violator of § 6(1) is subject to a term of imprisonment of between three and seven years and a fine not exceeding $10,000.   Ill. Rev. Stat., ch. 38, ¶¶ 1005-8-1(5)

---

§ 12, in part (the third sentence, prohibiting experimentation with or exploitation of fetal tissue).

[8] Section 6(1) then provided:

"No person who intentionally terminates a pregnancy after the fetus is known to be viable shall intentionally fail to exercise that degree of professional skill, care and diligence to preserve the life and health of the fetus which such person would be required to exercise in order to preserve the life and health of any fetus intended to be born and not aborted.   Any physician or person assisting in such a pregnancy termination who shall intentionally fail to take such measures to encourage or to sustain the life of a fetus known to be viable before or after birth, commits a Class 2 felony if the death of a viable fetus or infant results from such failure."   Ill. Rev. Stat., ch. 38, ¶ 81-26 (1983).

On June 30, 1984, the Illinois Legislature amended § 6(1), overriding another veto of the Governor.   1984 Ill. Laws, Pub. Act 83-1128, § 1.   The Court of Appeals addressed the constitutionality of § 6(1) as it appeared prior to the 1984 amendment.   See *Charles* v. *Daley*, 749 F. 2d 452, 455 (CA7 1984).

[9] Section 6(4) then provided:

"No person who intentionally terminates a pregnancy shall intentionally fail to exercise that degree of professional skill, care and diligence to preserve the life and health of the fetus which such person would be required to exercise in order to preserve the life and health of any fetus intended to be born and not aborted when there exists, in the medical judgment of the physician performing the pregnancy termination based on the particular facts of the case before him, a possibility known to him of sustained survival of the fetus apart from the body of the mother, with or without artificial support.   Any physician or person assisting in such pregnancy termination who shall intentionally fail to take such measures to encourage or sustain the life of such a fetus, before or after birth, is guilty of a Class 3 felony if the death of a viable fetus or an infant results from such failure."   Ill. Rev. Stat., ch. 38, ¶ 81-26 (1983).

Section 6(4) was amended by the 1984 statute cited in n. 8, *supra*, but the Court of Appeals assessed its constitutionality on the version quoted above.   See *Charles* v. *Daley*, 749 F. 2d, at 455.

and 1005–9–1(1) (1983). A violator of § 6(4) is subject to a term of imprisonment of between two and five years and a fine not exceeding $10,000. Ill. Rev. Stat., ch. 38, ¶¶ 1005–8–1(6) and 1005–9–1(1) (1983).

The plaintiffs appealed the denial of the preliminary injunction as to § 2(10), which defines the term "abortifacient," [10] and as to § 11(d), which requires a physician who prescribes an abortifacient to tell the patient what it is. [11] A violator of § 11(d) is subject to a term of imprisonment of not more than 30 days, and a fine not exceeding $500. Ill. Rev. Stat., ch. 38, ¶¶ 1005–8–3(3) and 1005–9–1(3) (1983). No cross-appeal was taken. The Court of Appeals for the Seventh Circuit instructed the District Court to enter a preliminary injunction as to §§ 2(10) and 11(d), because these statutory provisions forced physicians "to act as the mouthpiece for the State's theory of life." *Charles* v. *Carey,* 627 F. 2d 772, 789 (1980). [12]

---

[10] Section 2(10) provides:

"'Abortifacient' means any instrument, medicine, drug, or any other substance or device which is known to cause fetal death when employed in the usual and customary use for which it is manufactured, whether or not the fetus is known to exist when such substance or device is employed." Ill. Rev. Stat., ch. 38, ¶ 81–22 (1983).

[11] Section 11(d) provides in relevant part:

"Any person who prescribes or administers any instrument, medicine, drug or other substance or device, which he knows to be an abortifacient, and which is in fact an abortifacient, and intentionally, knowingly or recklessly fails to inform the person for whom it is prescribed or upon whom it is administered that it is an abortifacient commits a Class C misdemeanor." Ill. Rev. Stat., ch. 38, ¶ 81–31 (1983).

[12] The Court of Appeals instructed the District Court also to enter a preliminary injunction against the following sections: § 3.2(A)(1)(a)(iii); § 3.5(2); § 6(6); § 3.2(A)(1)(a) (defining the terms "by the physician who is to perform the abortion" and "the woman is provided at least 24 hours before the abortion"); § 3.2(A)(1)(b) (defining the term "from the physician at least 24 hours before the abortion is to be performed"); § 3.2(B)(1) (waiver of waiting period); § 10(k) (reporting requirement for waiver of waiting period); § 3.2(A)(1)(a) (defining the term "with a true copy of her pregnancy test result"); and § 6(2). See 627 F. 2d, at 792, and n. 36.

On remand, the District Court permanently enjoined, among others, §§ 6(4), 2(10), and 11(d). *Charles* v. *Carey*, 579 F. Supp. 464 (1983).[13] On appeal and cross-appeal, the Court of Appeals affirmed the entry of the permanent injunction as to the three sections, and also permanently enjoined the enforcement of § 6(1). 749 F. 2d 452 (1984). The State did not appeal the grant of the permanent injunction. Diamond, however, filed a notice of appeal to this Court and a jurisdictional statement. As we have indicated, see n. 4, *supra*, Doctor Diamond is the sole appellant here. We noted probable jurisdiction. 471 U. S. 1115 (1985).

The State, through the office of its Attorney General, subsequently filed with this Court a "letter of interest," invoking our Rule 10.4, which provides: "All parties to the proceeding in the court from whose judgment the appeal is being taken shall be deemed parties in this Court . . . ." In that letter Illinois stated:

> "Although not an appellant, the Office of the Attorney General . . . is a party in the United States Supreme Court and is designated an appellee. The Illinois Attorney General's interest in this proceeding is identical to that advanced by it in the lower courts and is essentially co-terminous with the position on the issues set forth by the appellants." Letter dated July 15, 1985, to the Clerk of the Court from the Director of Advocacy, Office of the Attorney General of Illinois.

See App. to Reply Brief for Appellants A–1. Illinois' absence as an appellant requires that we examine our jurisdiction to entertain this appeal.

## II

Article III of the Constitution limits the power of federal courts to deciding "cases" and "controversies." This re-

---

[13] Other sections of the Abortion Law had been preliminarily enjoined under a separate opinion by the District Court following remand. See *Charles* v. *Carey*, 579 F. Supp. 377 (1983).

quirement ensures the presence of the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker* v. *Carr*, 369 U. S. 186, 204 (1962). The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements. This Court consistently has required, in addition, that the party seeking judicial resolution of a dispute "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct" of the other party. *Gladstone, Realtors* v. *Village of Bellwood*, 441 U. S. 91, 99 (1979); see also *Warth* v. *Seldin*, 422 U. S. 490, 501 (1975).

The nature of the injury is central to the Art. III inquiry, because standing also reflects a due regard for the autonomy of those most likely to be affected by a judicial decision. "The exercise of judicial power . . . can so profoundly affect the lives, liberty, and property of those to whom it extends," *Valley Forge Christian College* v. *Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 473 (1982), that the decision to seek review must be placed "in the hands of those who have a direct stake in the outcome." *Sierra Club* v. *Morton*, 405 U. S. 727, 740 (1972). It is not to be placed in the hands of "concerned bystanders," who will use it simply as a "vehicle for the vindication of value interests." *United States* v. *SCRAP*, 412 U. S. 669, 687 (1973).

## III

Had the State of Illinois invoked this Court's appellate jurisdiction under 28 U. S. C. § 1254(2) and sought review of the Court of Appeals' decision, the "case" or "controversy" requirement would have been met, for a State has standing to defend the constitutionality of its statute. Diamond argues that Illinois' "letter of interest" demonstrates the State's continued concern with the enforcement of its Abortion Law, and renders the State the functional equivalent

of an appellant. Accordingly, Diamond asserts, there is no jurisdictional problem in the case. This claim must be rejected.

It is true that, as a party below, the State remains a party here under our Rule 10.4.[14] But status as a "party" does not equate with status as an appellant. To appear before the Court as an appellant, a party must file a notice of appeal, the statutory prerequisite to invoking this Court's jurisdiction. See 28 U. S. C. § 2101(c).[15] Illinois' mere expression of interest is insufficient to bring the State into the suit as an appellant. By not appealing the judgment below, the State indicated its acceptance of that decision, and its lack of interest in defending its own statute.[16] The State's general interest may be adverse to the interests of appellees, but its failure to

---

[14] The purpose of the Rule is to provide a means for a party below, who was not notified that this Court's review has been sought by another party, to make its interests known to the Court. Frequently, an appellant would seek review as to only one party below, permitting the judgment to stand as to others. See R. Stern, E. Gressman, & S. Shapiro, Supreme Court Practice § 6.20 (6th ed. 1986), and § 6.35 (3d ed. 1962) (describing evolution of the Rule). This Court's Rule 10.4 therefore avoids the adjudication of rights in a party's absence, but it does not provide a means to obtain review in the absence of the filing of a notice of appeal by a proper party.

[15] Title 28 U. S. C. § 2101(c) provides: "Any other appeal or any writ of certiorari intended to bring any judgment or decree in a civil action, suit or proceeding before the Supreme Court for review shall be taken or applied for within ninety days after the entry of such judgment or decree."

[16] The State's reasons for abandoning this suit are not articulated in the record. We have noted above, however, that, during the pendency of this case before the Court of Appeals, Illinois again amended its Abortion Law. 1984 Ill. Laws, Pub. Act 83–1128. At the time of the Court of Appeals' decision, which was based on the preamendment version of the Abortion Law, the amended sections were subject to a temporary restraining order. See *Keith* v. *Daley*, No. 84 C 5602 (ND Ill. 1984). The Court of Appeals declined to assess the constitutionality of the 1984 amendments and rejected challenges of mootness based on those amendments. *Charles* v. *Daley*, 749 F. 2d, at 455, 457–458. The State's inaction may well be due to its concern with the amended, not the earlier, form of the statutes under attack.

invoke our jurisdiction leaves the Court without a "case" or "controversy" between appellees and the State of Illinois. Cf. *Princeton University* v. *Schmid*, 455 U. S. 100 (1982).

Had the State sought review, this Court's Rule 10.4 makes clear that Diamond, as an intervening defendant below, also would be entitled to seek review, enabling him to file a brief on the merits, and to seek leave to argue orally. But this ability to ride "piggyback" on the State's undoubted standing exists only if the State is in fact an appellant before the Court; in the absence of the State in that capacity, there is no case for Diamond to join.

## IV

### A

Diamond claims that his interests in enforcement permit him to defend the Abortion Law, despite Illinois' acquiescence in the Court of Appeals' ruling of unconstitutionality. This claim also must fail. Doctor Diamond attempts to equate his position with that of appellees, the physicians who instituted this suit in the District Court. Appellees, however, had standing to bring suit against the state officials who were charged with enforcing the Abortion Law because appellees faced possible criminal prosecution. See, *e. g., Doe* v. *Bolton*, 410 U. S. 179, 188 (1973). The conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic "case" or "controversy" within the meaning of Art. III.

The conflict presented by Diamond is different. Were the Abortion Law to be held constitutional, Diamond could not compel the State to enforce it against appellees because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R. S.* v. *Richard D.*, 410 U. S. 614, 619 (1973); see *Leeke* v. *Timmerman*, 454 U. S. 83 (1981); *Sure-Tan, Inc.* v. *NLRB*, 467 U. S. 883 (1984). See also *Younger* v. *Harris*, 401 U. S. 37, 42 (1971); *Bailey* v. *Patterson*, 369 U. S. 31, 33 (1962). Cf. *Allen* v. *Wright*, 468 U. S. 737, 754 (1984) ("[A]n asserted

right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court").

The concerns for state autonomy that deny private individuals the right to compel a State to enforce its laws apply with even greater force to an attempt by a private individual to compel a State to create and retain the legal framework within which individual enforcement decisions are made. The State's acquiescence in the Court of Appeals' determination of unconstitutionality serves to deprive the State of the power to prosecute anyone for violating the Abortion Law. Diamond's attempt to maintain the litigation is, then, simply an effort to compel the State to enact a code in accord with Diamond's interests. But "the power to create and enforce a legal code, both civil and criminal" is one of the quintessential functions of a State. *Alfred L. Snapp & Son, Inc.* v. *Puerto Rico ex rel. Barez,* 458 U. S. 592, 601 (1982). Because the State alone is entitled to create a legal code, only the State has the kind of "direct stake" identified in *Sierra Club* v. *Morton,* 405 U. S., at 740, in defending the standards embodied in that code.

B

Even if there were circumstances in which a private party would have standing to defend the constitutionality of a challenged statute,[17] this is not one of them. Diamond is not able to assert an injury in fact. A physician has standing to challenge an abortion law that poses for him a threat of criminal prosecution. *Doe* v. *Bolton,* 410 U. S., at 188; see *Planned Parenthood of Central Mo.* v. *Danforth,* 428 U. S. 52, 62 (1976). In addition, a physician who demonstrates that abortion funding regulations have a direct financial impact on his practice may assert the constitutional rights of other individ-

---

[17] The Illinois Legislature, of course, has the power to create new interests, the invasion of which may confer standing. In such a case, the requirements of Art. III may be met. See *Simon* v. *Eastern Kentucky Welfare Rights Org.,* 426 U. S. 26, 41, n. 22 (1976).

uals who are unable to assert those rights themselves. See *Singleton* v. *Wulff*, 428 U. S. 106 (1976). Diamond attempts to assert an equivalent interest based upon his personal status as a doctor, a father, and a protector of the unborn. We must reject Diamond's claims that his personal and professional interests confer standing.

Diamond, who is a pediatrician, claims that if the Abortion Law were enforced, he would gain patients; fewer abortions would be performed and those that would be performed would result in more live births, because the law requires a physician to attempt to preserve the life of the aborted fetus. By implication, therefore, the pool of potential fee-paying patients would be enlarged. The possibilities that such fetuses would survive and then find their way as patients to Diamond are speculative, and "unadorned speculation will not suffice to invoke the federal judicial power." *Simon* v. *Eastern Kentucky Welfare Rights Org.*, 426 U. S. 26, 44 (1976). Diamond's situation, based on speculation and hoped-for fees is far different from that of the physicians in *Wulff, supra*, where actual fees were limited by the challenged Missouri statute.

Diamond also alleges that, as a physician, he has standing to litigate the standards of medical practice that ought to be applied to the performance of abortions.[18] Although Diamond's allegation may be cloaked in the nomenclature of a special professional interest, it is simply the expression of a desire that the Illinois Abortion Law as written be obeyed. Article III requires more than a desire to vindicate value interests. See *United States* v. *SCRAP*, 412 U. S., at 687. It requires an "'injury in fact'" that distinguishes "a person with a direct stake in the outcome of a litigation—even

---

[18] Diamond's purported interest appears to rest on § 11(a) of the Abortion Law, which provides that the requirements of that law constitute the standards of conduct for the medical profession. Since that provision is neither before the Court nor integrally related to any of the sections at issue in this proceeding, it cannot confer standing on Diamond.

though small—from a person with a mere interest in the problem." *Id.*, at 689, n. 14. Diamond has an interest, but no direct stake, in the abortion process. This "abstract concern . . . does not substitute for the concrete injury required by Art. III." *Simon* v. *Eastern Kentucky Welfare Rights Org.*, 426 U. S., at 40. Similarly, Diamond's claim of conscientious objection to abortion does not provide a judicially cognizable interest.

Doctor Diamond also asserts that he has standing as the father of a daughter of childbearing years. First, to the extent that Diamond's claim derives from § 3(3) of the Abortion Law, the parental notification section, he lacks standing to continue this litigation, for it does not address the validity of that provision. Second, to the extent that he claims an interest in ensuring that his daughter is not prescribed an abortifacient without prior information—a concern ostensibly triggered by the invalidation of §§ 2(10) and 11(d)—he has failed to show that he is a proper person to advance this claim on her behalf. Diamond has not shown either that his daughter is currently a minor or that she is otherwise incapable of asserting her own rights. Diamond's failure to adduce factual support renders him incapable of maintaining this appeal in his capacity as a parent. See *Bender* v. *Williamsport Area School Dist.*, 475 U. S. 534, 548–549 (1986).

Nor can Diamond assert any constitutional rights of the unborn fetus.[19] Only the State may invoke regulatory measures to protect that interest, and only the State may invoke the power of the courts when those regulatory measures are subject to challenge.

---

[19] Diamond claims that he is asserting the rights of his prospective patients, who survive abortion, to be born with as few handicapping conditions as possible. Diamond asserted this claim before the District Court as a basis for appointment as guardian ad litem for unborn fetuses. That claim was rejected by the District Court.

## V

Finally, Diamond asserts that he has standing based on two interests that relate not to the Abortion Law, but to his involvement in this litigation. Neither interest suffices.

### A

Diamond's status as an intervenor below, whether permissive or as of right, does not confer standing sufficient to keep the case alive in the absence of the State on this appeal. Although intervenors are considered parties entitled, among other things, to seek review by this Court, *Mine Workers* v. *Eagle-Picher Mining & Smelting Co.*, 325 U. S. 335, 338 (1945), an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III. See *id.*, at 339. See also *Bryant* v. *Yellen*, 447 U. S. 352, 368 (1980).

This Court has recognized that certain public concerns may constitute an adequate "interest" within the meaning of Federal Rule of Civil Procedure 24(a)(2), see *Cascade Natural Gas Corp.* v. *El Paso Natural Gas Co.*, 386 U. S. 129, 135 (1967), and has held that an interest under Rule 24(a)(2), which provides for intervention as of right,[20] requires a "significantly protectable interest." See *Donaldson* v. *United States*, 400 U. S. 517, 531 (1971). However, the precise relationship between the interest required to satisfy the Rule and the interest required to confer standing, has led to anomalous decisions in the Courts of Appeals.[21] We need not de-

---

[20] Federal Rule of Civil Procedure 24(a)(2) provides for intervention "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[21] The Courts of Appeals have reached varying conclusions as to whether a party seeking to intervene as of right must himself possess standing. Compare *United States* v. *39.36 Acres of Land*, 754 F. 2d 855, 859 (CA7

cide today whether a party seeking to intervene before a district court must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Art. III. To continue this suit in the absence of Illinois, Diamond himself must satisfy the requirements of Art. III. The interests Diamond asserted before the District Court in seeking to intervene plainly are insufficient to confer standing on him to continue this suit now.

### B

At oral argument, Diamond stated that the District Court has assessed attorney's fees against him and the State, jointly and severally. This fee award, Diamond asserted, provided the requisite standing to litigate this case:

> "The standing or the real controversy thus between the parties to this case is a very real sum of money, a judgment that runs in favor of the individual plaintiff physicians in this case and against the individual defendants intervenors whom I represent." Tr. of Oral Arg. 4.

Diamond is claiming that an award of fees entered after a decision on the merits by the District Court and the Court of Appeals, and after probable jurisdiction had been noted by this Court, gives him a direct stake in the enforcement of the Illinois Abortion Law. In short, because Diamond stands to lose the amount of the fee unless the State's regulations con-

---

1985) (intervention requires an interest in excess of that required for standing), cert. pending *sub nom. Save the Dunes Council, Inc.* v. *United States*, No. 85–426, with *Southern Christian Leadership Conference* v. *Kelley*, 241 U. S. App. D. C. 340, 747 F. 2d 777 (1984) (equating interest necessary to intervene with interest necessary to confer standing), and *United States* v. *American Tel. & Tel. Co.*, 206 U. S. App. D. C. 317, 642 F. 2d 1285 (1980) (intervention is proper only if the would-be intervenor has an interest in the outcome of the suit different from that of the public as a whole), with *Sagebush Rebellion, Inc.* v. *Watt*, 713 F. 2d 525 (CA9 1983) (resolving intervention questions without reference to standing doctrine), and *Planned Parenthood of Minnesota, Inc.* v. *Citizens for Community Action*, 558 F. 2d 861 (CA8 1977) (same).

cerning abortion are reinstated, he claims he has been injured by the invalidation of those regulations.[22]

But *Valley Forge Christian College*, 454 U. S., at 472, makes clear that Art. III standing requires an injury with a nexus to the substantive character of the statute or regulation at issue:

> "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone, Realtors* v. *Village of Bellwood*, 441 U. S. 91, 99 (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon* v. *Eastern Kentucky Welfare Rights Org.*, 426 U. S. 26, 38, 41 (1976)."

Any liability for fees is, of course, a consequence of Diamond's decision to intervene, but it cannot fairly be traced to the Illinois Abortion Law. The fee award is wholly unrelated to the subject matter of the litigation, and bears no relation to the statute whose constitutionality is at issue here. It is true that, were the Court to resolve the case on the merits against appellees, appellees would no longer be "prevailing parties" entitled to an award of fees under 42 U. S. C. § 1988. But the mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the

---

[22] While not determinative of the standing claim in this case, Diamond responded to the fee award by filing a motion to dismiss him from the litigation and name Americans United for Life, Inc., as the sole intervenor. See n. 6, *supra*. In the alternative, Diamond asked the District Court to clarify the original intervention order by stating that "AUL is an intervening defendant for all purposes, including the assessment of attorney's fees." The motion further stated that "AUL is the real party in interest." In assessing fees against appellant Diamond, the District Court stated that "the State defendants and intervenors played at least equal roles in defending the abortion statute." *Charles* v. *Daley*, No. 79–C–4541 (Apr. 22, 1985).

suit itself does not mean that the injury is cognizable under Art. III.

## VI

The State of Illinois, by failing to appeal, has indicated no direct interest in upholding the four sections of the Abortion Law at issue here. Diamond has stepped in, attempting to maintain the litigation abandoned by the State in which he resides. Because he lacks any judicially cognizable interest in the Abortion Law, his appeal is dismissed for want of jurisdiction.

*It is so ordered.*

JUSTICE WHITE concurs in the judgment.

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE and JUSTICE REHNQUIST join, concurring in part and concurring in the judgment.

I join the Court's judgment and Part I of its opinion, and I agree with much of the Court's discussion of why Dr. Diamond's asserted interests in defending the Illinois Abortion Law do not satisfy the Art. III standing requirement. I write separately, however, because I do not agree with the Court's reasons for rejecting Dr. Diamond's contention that Illinois' presence as an appellee ensures that a justiciable controversy is before us. In my view, Dr. Diamond was not a proper intervenor in the Court of Appeals, and therefore Illinois is not before this Court in any capacity, because Diamond was not authorized to bring this appeal under 28 U. S. C. § 1254(2).

The Court assumes that Diamond could properly bring an appeal under § 1254(2) and therefore that Illinois is present in this Court as an appellee under this Court's Rule 10.4. The Court then asserts that Illinois is not "the functional equivalent of an appellant" by virtue of its status as a party under Rule 10.4. *Ante,* at 62–63. On this basis, the Court concludes that Illinois' "failure to invoke our jurisdiction leaves the Court without a 'case' or 'controversy' between

appellees and the State of Illinois," *ante*, at 63–64, even if Illinois' interests are actually adverse to appellees' interests. I believe this analysis is needlessly inconsistent with this Court's opinion in *Director, OWCP* v. *Perini North River Associates*, 459 U. S. 297 (1983), which holds that once a case is properly brought here the case-or-controversy requirement can be satisfied even if the parties who are asserting their adverse interests before this Court are not formally aligned as adversaries.

In *Perini*, an employee injured while performing his job filed a claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act. *Id.*, at 300. The employer denied that the employee was covered by the Act, and an Administrative Law Judge found for the employer. At that point, the Director, Office of Workers' Compensation Programs, joined the employee in an appeal to the Benefits Review Board. *Id.*, at 300–301. The Board affirmed the denial of coverage, and the employee sought review of its decision in the Court of Appeals, where the Director participated as a respondent. *Id.*, at 301. The Court of Appeals denied the employee's petition, and the Director—but not the employee—filed a petition for certiorari in this Court. *Id.*, at 301, 303. The employee did, however, file a brief in support of the Director's petition for certiorari and a brief on the merits after certiorari was granted. *Id.*, at 303.

In this Court, the employer challenged the Director's standing to seek review of the Court of Appeals' decision. *Id.*, at 302. Without deciding whether the Director had standing, we held that "the presence of [the employee] as a party respondent arguing for his coverage under the Act assures that an admittedly justiciable controversy is now before the Court." *Id.*, at 305. The basis for our holding was the employer's concession that the Director was a proper party respondent before the Court of Appeals. *Id.*, at 304. As a proper party in the Court of Appeals, the Director had "statutory authority to seek review in this Court" under 28

U. S. C. § 1254(1), which authorizes a grant of certiorari "upon the petition of any party" below. See *id.*, at 304, and n. 13. Therefore, whether or not the Director had standing in this Court, the Director's petition brought the employee before the Court as a party respondent pursuant to this Court's Rule 19.6. *Id.*, at 303–304, and n. 12. Because the employee clearly had standing, and actively asserted his adverse interests in this Court, a live case or controversy was presented. *Id.*, at 305.

In two important respects this case is directly analogous to *Perini*. First, § 1254(2) provides that "a *party* relying on a State statute held by a court of appeals to be invalid as repugnant to the Constitution . . . of the United States" may bring an appeal to this Court (emphasis added). Consequently, if Dr. Diamond was a proper party in the Court of Appeals, his statutorily authorized appeal brought this case here, just as the Director's petition for certiorari brought *Perini* to this Court. Second, since Rule 10.4 parallels, as to appeals in this Court, the provisions of Rule 19.6 for cases which come here by way of certiorari, Illinois' presence as an appellee, like the presence of the employee in *Perini* as a respondent, can satisfy the requirements of a live case or controversy even if the party who brought the case here lacks standing. I therefore disagree with the Court's apparent conclusion that the mere fact that Illinois is not an appellant ends the inquiry into whether its presence here assures a live case or controversy.

*Perini* is fairly distinguishable from this case, however, because in my view Dr. Diamond was not a proper intervenor, at least not in the Court of Appeals, and consequently was not a "party" authorized to bring an appeal here. Appellees contend that "[i]ntervenor claimed no justiciable interest in any of the four provisions before this Court when he sought to intervene below." Brief for Appellees 14. The Courts of Appeals have expressed differing views as to the relationship between the interest required to confer standing and the

interest required to intervene under Rule 24 of the Federal Rules of Civil Procedure. See *ante*, at 68, and n. 21. Like the Court, I find it unnecessary to decide that question, because the challenge to Diamond's standing subsumes a challenge to the sufficiency of his interest as an intervenor for purposes of Rule 24. Appellees challenged the propriety of Diamond's intervention in the District Court, and although they did not raise this issue in the Court of Appeals I believe it may properly be considered since, under *Perini*, it bears on whether a justiciable controversy is presented in this Court. If Diamond was not a proper party in the Court of Appeals, his appeal is clearly improper under § 1254(2).

Rule 24(a)(2) provides that a person

> "*shall* be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties" (emphasis added).

Rule 24(b)(2) provides that a person

> "*may* be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties" (emphasis added).

The District Court did not explain whether it granted intervention as of right under Rule 24(a)(2) or permissive intervention under Rule 24(b)(2), and hence it is necessary to consider whether the interests Diamond advanced could have made him a proper intervenor on either theory in the Court of Appeals. This Court's decision in *Donaldson* v. *United*

*States*, 400 U. S. 517 (1971), establishes that Diamond's asserted interests in the provisions at issue in the Court of Appeals fall well outside the ambit of Rule 24(a)(2), and it is likewise apparent that he was not entitled to permissive intervention under Rule 24(b)(2).

*Donaldson* held that a taxpayer was not entitled to intervene as of right in a proceeding to enforce an internal revenue summons directed to his former employer, and ordering the employer to produce its records concerning the taxpayer for use in a civil investigation of the taxpayer. The Court recognized that the taxpayer had an interest in the records because they presumably contained details of payments from his employer to him "possessing significance for federal income tax purposes." *Id.*, at 531. Nonetheless, since this interest was "nothing more than a desire" by the taxpayer to overcome his employer's "willingness, under summons, to comply and to produce records," the Court held:

> "This interest cannot be the kind contemplated by Rule 24(a)(2) when it speaks in general terms of 'an interest relating to the property or transaction which is the subject of the action.' What is obviously meant there is a significantly protectable interest." *Ibid.*

Clearly, *Donaldson*'s requirement of a "significantly protectable interest" calls for a direct and concrete interest that is accorded some degree of legal protection. See *Tiffany Fine Arts, Inc.* v. *United States*, 469 U. S. 310, 315 (1985) (noting that *Donaldson* "held that the employee's interest was not legally protectible and affirmed the denial of the employee's motions for intervention"); *New Orleans Public Service, Inc.* v. *United Gas Pipe Line Co.*, 732 F. 2d 452, 464 (CA5 1984) (en banc); *Southern Christian Leadership Conference* v. *Kelley*, 241 U. S. App. D. C. 340, 342, 747 F. 2d 777, 779 (1984) *(per curiam)*. See also Advisory Committee's Notes on Fed. Rule Civ. Proc. 24, 28 U. S. C. App., p. 567. The abstract interests advanced by Diamond are if anything less "significantly protectable" than the interest of the

taxpayer in *Donaldson*, who alleged that the summons was unlawful because it was part of an investigation for purposes of criminal prosecution. See 400 U. S., at 521. Diamond's speculative claim that his practice may benefit from the Illinois Abortion Law bespeaks a highly contingent financial interest far less tangible than that of the taxpayer in *Donaldson*, who faced a palpable threat of tax liability; Diamond's "desire that the Illinois Abortion Law as written be obeyed," *ante*, at 66, should fare no better than the taxpayer's desire to prevent his employer from putting him at risk by complying with the summons; and Diamond's asserted interests as a father and a parent are indistinguishable from the interests of any beneficiary of the provisions of a criminal law.

I discern nothing in any of the provisions of the Illinois Abortion Law that were challenged in the Court of Appeals to suggest that Illinois meant to vest physicians, parents, or daughters with "significantly protectable interest[s]." Illinois enacted a criminal law which it would itself enforce, thereby making violators liable to the public as a whole, not to those members of the public who might in some degree benefit from the law's enactment or enforcement. Under these circumstances, it seems clear as a matter of interpreting Rule 24(a)(2) that only the State has a "significantly protectable interest" in undertaking to defend the standards contained in its criminal law, since there is no indication that Illinois intended to confer legally protectible interests on particular beneficiaries of that law.

Diamond's cause is not helped by Rule 24(b)(2), for he fails to satisfy the Rule's requirement, which has remained intact since it was first adopted in 1938, that "an applicant's claim or defense and the main action have a question of law or fact in common." The words "claim or defense" manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit, as is confirmed by Rule 24(c)'s requirement that a person desiring to inter-

vene serve a motion stating "the grounds therefor" and "accompanied by a pleading setting forth the claim or defense for which intervention is sought." Thus, although permissive intervention "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation," *SEC* v. *United States Realty & Improvement Co.*, 310 U. S. 434, 459 (1940), it plainly *does* require an interest sufficient to support a legal claim or defense which is "founded upon [that] interest" and which satisfies the Rule's commonality requirement. *Id.*, at 460. Dr. Diamond simply has no claim or defense in this sense; he asserts no actual, present interest that would permit him to sue or be sued by appellees, or the State of Illinois, or anyone else, in an action sharing common questions of law or fact with those at issue in this litigation.

This analysis is not affected by any potential liability for attorney's fees to which Diamond may be subject in connection with his intervention in this litigation. I agree with the Court that any such liability is "a byproduct of the suit itself," *ante*, at 70–71, and as such it cannot have served as a basis for intervention in the Court of Appeals. At oral argument the question was raised whether Diamond, if not a proper intervenor, could nonetheless be considered a party against whom attorney's fees may be awarded to "the prevailing party" under 42 U. S. C. § 1988. That issue, however, is not before this Court, since an award of attorney's fees is "uniquely separable from the cause of action" on the merits, *White* v. *New Hampshire Dept. of Employment Security*, 455 U. S. 445, 452 (1982); *FCC* v. *League of Women Voters of California*, 468 U. S. 364, 373–375, n. 10 (1984), and the proceedings in the District Court concerning attorney's fees are neither contained in the record before us nor the subject of the questions presented in Diamond's jurisdictional statement. Accordingly, I express no view as to whether an award of attorney's fees against Dr. Diamond would be

proper with respect to any proceedings in which he was not a proper intervenor.

Dr. Diamond, then, was not a proper intervenor in the Court of Appeals, although of course it would have been open to that court to allow him to file a brief as an *amicus curiae*. Accordingly, Dr. Diamond was not authorized to bring an appeal in this Court, and the appeal must be dismissed for want of jurisdiction.