In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-1062 & 00-1126

Kendall-Jackson Winery, Ltd., et al.,

Plaintiffs-Appellees,

v.

Leonard L. Branson, Chairman of the
Illinois Liquor Control Commission, et al.,

Defendants,

and

Wirtz Corporation, doing business
as Judge & Dolph, Ltd., et al.,

Defendants-Appellants.


Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 99 C 3813 & 4312--Joan B. Gottschall, Judge.


Argued March 28, 2000--Decided May 12, 2000


   Before Easterbrook, Manion, and Evans, Circuit Judges.

   Easterbrook, Circuit Judge.  Last year Illinois
revamped its regulation of the liquor
distribution business. The Illinois Wine and
Spirits Industry Fair Dealing Act of 1999, 815
ILCS 725/1 to 725/99, makes it unlawful for a
supplier of alcoholic beverages to cancel or
substantially alter any distribution arrangement,
new or existing, without "good cause." "'Good
cause' means a failure by a distributor to comply
with essential and reasonable requirements
imposed upon the distributor by the supplier or
bad faith in the performance of the
distributorship agreement." 815 ILCS 725/5.
Suppliers, which often encourage competition
among distributors for the privilege of acting as
wholesalers (a process that holds down the cost
of distribution services), were dismayed by the
new statute. Some tried to terminate their
distributors before the new law was enacted, so
that they could at least take bids before
becoming locked in, only to be met by 815 ILCS
725/35(c)(2), which empowers the Illinois Liquor

Control Commission to order suppliers to continue furnishing their goods to the same distributors, on the same terms, and at the same prices, even if preexisting contracts permit change at will. Immediately after the Act went into force on May 21, 1999, several distributors asked the Commission to direct suppliers to resume (or continue) dealings that had been (or were about to be) discontinued. The Commission swiftly issued ex parte interim orders to that effect. Section 725/35(f) forbids any state court to interfere until the Commission has rendered a final decision but does not set a time limit for the Commission. After issuing its ex parte orders, the Commission settled into what appeared to be extended slumber. Flummoxed by the state process, the suppliers turned to federal court.

Suing under 42 U.S.C. sec.1983, three suppliers--Kendall-Jackson Winery, Jim Beam Brands, and Sutter Home Winery--contend that the Act violates the contracts clause of the Constitution by depriving them of entitlements, such as the rights to choose distributors and to set prices, that they possessed under contracts and former law. They also contend that the Act discriminates against interstate commerce, and thus violates the reservation of powers to Congress in the commerce clause, because only out-of-state wineries are locked into distributors. The Act, which applies to "agreements" between suppliers and distributors, defines that word this way:

"Agreement" means any contract, agreement, course of dealing, or arrangement, express or implied, whether oral or written, for a definite or indefinite period between a supplier (other than (i) an Illinois winery or (ii) a winery that has annual case sales in the State of Illinois less than or equal to 10,000 cases per year, and a distributor pursuant to which a distributor has been granted a distributorship).

815 ILCS 725/5. Although this language misplaces the closing parenthesis (it should come after "year" and not "distributorship"), the exclusion of local wineries is plain and creates problems under Bacchus Imports, Ltd. v. Dias, 468 U.S. 263 (1984), and similar cases. The exclusion of small sellers also may have implications for interstate commerce, because it carves out wineries that sell fewer than 10,001 cases "in the State of Illinois" rather than all small wineries. There are similar, and redundant, exclusions in sec.725/10(d), sec.725/30, and sec.725/35(b), (c)(1), and (c)(2). The district court concluded that the Act probably violates both the contracts clause and the commerce clause, and it issued a preliminary injunction. 82 F. Supp. 2d 844 (N.D. Ill. 2000). The three suppliers then dropped

their old distributors, which appealed. R.J. Distributing Co., one of these, dismissed its appeal under Fed. R. App. P. 42(b). The two other appeals are live--but the Commission is not among the appellants. (We refer to "the Commission" for convenience; its commissioners are the parties. See Ex parte Young, 209 U.S. 123 (1908).)

If the district court had entered relief against the distributors, the Commission's decision not to appeal would not deprive the distributors of an opportunity to rid themselves of judicial obligations or restrictions. But the district court's injunction runs against the Commission exclusively. The operative language is:

Until further order of the Court, the Commissioners, and all persons acting under their direction or control, are PRELIMINARILY ENJOINED from:

i.  enforcing or applying the Illinois Wine and Spirits Industry Fair Dealing Act of 1999 in any way against Jim Beam; and

ii.  enforcing any orders previously issued by the Commission under the Act directed to Jim Beam, including but not limited to the order dated June 2, 1999 directing Jim Beam to continue providing products alleged to have been withdrawn in violation of the Act to Pacific Wine Company at prices and quantities in effect under prior distributorship relationships.

A second injunction, changing only the names and date, was entered in favor of Kendall-Jackson. Because the Commission has not appealed, it remains bound by the injunctions no matter what happens on the distributors' appeals, so it is not clear what point the distributors' appeals can serve. Penda Corp. v. United States, 44 F.3d 967, 971 (Fed. Cir. 1994). Many cases, of which Diamond v. Charles, 476 U.S. 54 (1986), and Princeton University v. Schmid, 455 U.S. 100 (1982), are examples, show that a choice by a public body not to appeal from an adverse decision may doom any effort by private litigants to obtain review of the judgment. We inquired at oral argument whether the distributors are seeking more than an advisory opinion, and we have received post-argument memoranda from both the suppliers and the distributors.

According to the distributors, we can knock out the injunction against the Commission, despite its election not to appeal, by concluding that the district court should have abstained from decision; and if the distributors' appeal can

affect the injunction (and thus restore the Commission's entitlement to enforce its orders), then they are entitled to pursue relief here. The conclusion follows from the premise, but the premise is unsound. The distributors conceive of an obligation to abstain under Younger v. Harris, 401 U.S. 37 (1971), or Texas Railroad Commission v. Pullman Co., 312 U.S. 496 (1941), the two species of abstention potentially implicated by this suit, as equivalent to the absence of subject-matter jurisdiction, which means that all of the district court's orders (even those against non-appellants) must be vacated. Yet Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 477-80 (1977), holds that a state may waive Younger abstention. See also, e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992); Brown v. Hotel & Restaurant Employees, 468 U.S. 491, 500 n.9 (1984). An entitlement to waive is incompatible with a jurisdictional characterization, and in Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., 477 U.S. 619, 626 (1986), the Court drew this conclusion and rejected a contention that district courts lack jurisdiction whenever they should have abstained.

Illinois did not affirmatively waive the benefits of abstention, as the state agencies did in Hodory, Brown, and similar cases. But by declining to appeal the Commission has forfeited the application of that doctrine, at least for the time being. Abstention is designed for the states' benefit, and if a state is content with the outcome of federal litigation--as the Commission is content with the preliminary injunction--then abstention serves no point. Perhaps federal judges have the power to disregard a forfeiture (as opposed to a waiver), just as they have discretion to overlook a state's failure to assert the exhaustion requirement in a collateral attack on a criminal judgment. See Granberry v. Greer, 481 U.S. 129 (1987); cf. Hilton v. Braunskill, 481 U.S. 770 (1987). Hodory observes that states cannot compel federal courts to adjudicate a tough constitutional point when state courts may construe the statute in a way that obviates the need. 431 U.S. at 480 n.11 (discussing Pullman abstention). This implies that we might have the power to consider abstention despite the Commission's acquiescence in the preliminary injunction. But it does not demonstrate that we should use whatever power we possess. Federal courts abstain when states offer means to resolve (or to avoid) consideration of constitutional questions. Illinois does not offer any visible means of avoidance, and it has done everything possible to frustrate resolution. The Commission can take as long as it wants to issue a final

order, and so far it has yet to address the suppliers' objections to continuation of their pre-Act distribution relations. Until the Commission acts, state courts are forbidden to resolve disputes. Similarly unbounded delay by Illinois was deemed unconstitutional in Edgar v. MITE Corp., 457 U.S. 624 (1982), and none of the Justices in MITE even hinted that abstention would have been appropriate. Moreover, the argument defendants offer in support of Pullman abstention is not that state courts could construe the Act in a way that makes constitutional claims drop out, but that they might be inclined to sever the exemption of local suppliers. Severance does not avoid adjudication; it is just one possible consequence of a constitutional decision.

With abstention out of the picture, the distributors' position collapses. Their injury is derivative rather than direct. Nothing in the injunctions imposes any disabilities on them, rather than the Commission. The distributors emphasize that the injunctions injure them, by depriving them of the benefits of the Commission's orders. That much is indisputable; the problem, however, is that this injury cannot be undone now unless we are entitled to vacate injunctions that do not run against the appellants. The critical question is this: when a district judge enters an order creating obligations only for Defendant A, may the court of appeals alter the judgment on appeal by Defendant B when obligations imposed on A indirectly affect B? The distributors have not located any decision by the Supreme Court giving an affirmative answer, which would be incompatible with Diamond and Princeton. The Commission's decision not to appeal leaves the distributors in the position that they would have occupied had the Commission not entered the orders in the first place--and because Illinois does not recognize any private right of action to contest such an enforcement decision by the Commission, it would not be sound to allow the distributors to challenge that decision indirectly. Cf. Heckler v. Chaney, 470 U.S. 821 (1985); Allen v. Wright, 468 U.S. 737 (1984); Leeke v. Timmerman, 454 U.S. 83 (1981); Linda R.S. v. Richard D., 410 U.S. 614 (1973).

By addressing the subject under the rubric of "injury in fact," the distributors miss the real problem: redressability. Sure the injunction injures them, but how can their appeal redress that injury given that the injunction will continue to bind the Commission? See Sea Shore Corp. v. Sullivan, 158 F.3d 51 (1st Cir. 1998); Associated Builders & Contractors v. Perry, 16 F.3d 688 (6th Cir. 1994); McLaughlin v. Pernsley,

876 F.2d 308 (3d Cir. 1989). When a statute creates a private right of action, it is possible to see how such a question may be answered affirmatively. Consider Mausolf v. Babbitt, 125 F.3d 661 (8th Cir. 1997), in which the district court enjoined the National Park Service from enforcing certain regulations, and the Park Service did not pursue an appeal. Private parties that had intervened in the case sensibly were allowed to appeal, not simply because the injunction injured them (to the extent the regulations had helped them) but because federal regulations may be enforced by private parties by suits against the agencies (under the Administrative Procedure Act) and by suits against private parties under the federal-question jurisdiction to the extent a statute or regulation creates a private right of action, or under 42 U.S.C. sec.1983 to the extent the defendant is a state actor. See Maine v. Thiboutot, 448 U.S. 1 (1980). Many cases are similar in spirit to Mausolf, and we do not question their holdings. Likewise, a union or employer that prevails before the National Labor Relations Board may ask the Supreme Court to review a decision refusing to enforce that order, even though the Board's General Counsel has absolute prosecutorial discretion not to file a charge of unfair labor practices. After a charge has been filed, the Board has dual roles as prosecutor and adjudicator, and private parties acquire rights in the Board's final decisions that are enforceable even if the Board is content to see its orders annulled. 29 U.S.C. sec.160(f). But the distributors do not contend that Illinois law treats the Commission as an adjudicator, whose unfavorable decisions are subject to judicial review, nor has the Commission entered any final decision.

Nor do they contend that Illinois law provides a private right of action, after the fashion of the APA, to enforce the Commission's orders that the district court enjoined. Recall that Illinois forbids any judicial review of the Commission's interim decisions under sec.725/35. See 815 ILCS 725/35(f). Whatever review and enforcement ultimately may be available under sec.725/35(e) depend on a final order. A distributor applying to the Commission for interim relief under sec.725/35(d) appears to be just like a person asking the NLRB's General Counsel to initiate a proceeding under the National Labor Relations Act. (Wirtz Corporation asserts that a state court could issue a writ of mandamus to compel the Commission to proceed, but it does not cite any decision doing this, under either the 1999 Act or any similar Illinois law, and decisions such as Fisher v. Lexington Health Care, Inc., 188 Ill. 2d 455, 722 N.E.2d 1115 (1999), appear

to look the other way.) Because private parties cannot conduct an independent enforcement action, the injunction could not adversely affect the distributors in such an action, so Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 282-83 (1946), does not support their appeal. Our situation is similar to Diamond, where the state law was enforceable only by a public prosecutor, without the possibility of review at the behest of private persons. Unlike an order issued by the NLRB, an interim order issued by the Commission appears to be enforceable only by (or at the behest of) the Commission itself. To the extent that Norman's on the Waterfront, Inc. v. Wheatley, 444 F.2d 1011 (3d Cir. 1971), and Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 468 n.2 (9th Cir. 1984), hold that anyone who suffers injury in fact may appeal an order directed to a non-appealing public prosecutor, they did not survive Diamond.

One aspect of the distributors' argument on the merits undercuts their contention that they may appeal independently of the Commission and suggests that they were not aggrieved by the injunction at all. Responding to the suppliers' invocation of the contracts clause, the distributors contend that sec.725/35 does not change the law of Illinois. According to the distributors, modification or termination of a liquor distribution arrangement was unlawful in Illinois before the 1999 Act in the absence of good cause even if the contract between supplier and distributor expressly allows modification or termination for any reason (or establishes a dealership at will). This rule may be located, as the dealers see things, in a general duty of good faith and fair dealing that Illinois applies to contracts, and which (they say) sec.725/35 just instantiates. Like the district court, we doubt that Illinois has any such rule. See L.A.P.D., Inc. v. General Electric Corp., 132 F.3d 402 (7th Cir. 1997); Echo, Inc. v. Whitson Co., 121 F.3d 1099 (7th Cir. 1997); Digital Equipment Corp. v. Uniq Digital Technologies, Inc., 73 F.3d 756 (7th Cir. 1996); Industrial Representatives, Inc. v. CP Clare Corp., 74 F.3d 128 (7th Cir. 1996); Continental Bank, N.A. v. Everett, 964 F.2d 701 (7th Cir. 1992); Jespersen v. Minnesota Mining & Mfg. Co., 183 Ill. 2d 290, 700 N.E.2d 1014 (1998); Hentze v. Unverfehrt, 237 Ill. App. 3d 606, 610-11, 604 N.E.2d 536, 539 (5th Dist. 1992). Still, the distributors are free to file breach-of-contract actions against their former suppliers in state court, and if they are right about the existence and extent of the "good faith" duty in state law, then they will obtain the relief they seek independently of sec.725/35. The injunction against the Commission would not hamper pursuit of that goal in private contract

litigation. If the distributors are wrong, however, then it is hard to avoid the district court's conclusion that sec.725/35 has serious constitutional problems, because it dramatically reallocates rights under contracts that predate the legislation, and again the distributors do not have much to gain by this appeal.

If we err about the extent to which the Commission has the same freedom as a public prosecutor, then the distributors have a ready recourse. They may apply to a state court for an order compelling the Commission to appeal from any permanent injunction that the district court may enter. If the state court issues such an order (or if the Commission decides on its own to appeal), then all issues will be presented for resolution on the merits at the end of the case. If, however, the Commission again declines to appeal and the distributors are unable to persuade a state court to direct it to appeal, that will demonstrate how similar this situation is to Diamond. We trust that the district court will bring the case to a swift conclusion, so that our inability to resolve the legal questions on appeal from the preliminary injunction will not cause undue injury to any affected party. Because this panel also will hear any appeals from the final disposition, see Operating Procedure 6(b), we can expedite ultimate decision (and the parties could speed things up a bit more by relying on the legal arguments in the briefs that they have already filed).

The appeals are dismissed.