JONES, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s holding.that TPSA has standing to seek relief from an injunction that bound only state officials in their enforcement of Texas law. As strangers to the original injunction, and parties not directly affected by its continuance, I would hold that the association’s claim lacked redressability for standing purposes. I would have dismissed this appeal.
The panel correctly decides that TPSA had to demonstrate its Article III standing to pursue an appeal from the district court’s judgment adhering to its injunction against a Texas residency requirement for liquor distributors. . See Diamond v. Charles, 476 U.S. 54, 68-69, 106 S.Ct. 1697, 1706-07, 90 L.Ed.2d 48 (1986). Even if TPSA could show two requirements of standing, injury and traceability, I disagree with the majority’s conclusion that the association could show that a favorable judgment from this court would relieve the TABC’s Commissioner from his obligation to abide by the federal court’s injunction.
The Seventh Circuit confronted a factually indistinguishable situation involving a dispute between liquor suppliers and distributors, with the constitutionality of . 'a state regulation at its heart. In Kendall-Jackson Winery, Ltd. v. Branson, 212 F.3d 995 (7th Cir.2000), the court posited the following “critical” question: -“when a district judge enters an order creating obligations only for Defendant A, may the court of appeals alter the judgment on appeal by Defendant B when obligations imposed on A'indirectly affect B?” Id. at 998. The court answered, “No,” prefacing its explanation with the observation that an affirmative answer would be “incompatible” with Diamond v. Charles. The majority assert that the decisive issue in Diamond was merely the individual standing of an'Illinois physician who attempted to appeal an injunction against state abortion laws despite the State’s refusal to appeal. Because the doctor was not injured by the law, he lacked standing. I disagree with this narrow interpretation of Diamond; the physician’s'injury was'only a subsidiary point. The Court primarily relied on the principle that “a private citizen lacks á judicially cognizable interest in the prosecution or nonprosecution of another.” 476 U.S. at 64, 106 S.Ct. at 1704 (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973)). Characterizing the doctor’s interest as “an effort to compel the State to enact a code in ac'cord with [his] interests,” the Court explained that, “the power to create and enforce a legal code, both civil and criminal, is one of the quintessential functions of a State.” Id. at 65, 106 S.Ct. at 1705 (internal quotations and citations omitted). Only the State, in other words, has standing to defend the standards embodied in that code. Id. I see no distinction between Diamond and the position of TPSA in this case. Diamond reifies that because only the State ,was bound by the Cooper injunction not to enforce the resi *745 dency requirement, and TPSA was not so bound, the outcome of TPSA’s appeal cannot substitute for the State’s failure to participate.
The Kendall-Jackson court articulated two other grounds for its conclusion. First, the “Commission’s decision not tó appeal leaves the distributors in the position that they would have occupied had the Commission not entered the orders in the first place.” 212 F.3d at 998. Here, by analogy, TPSA’s members stand in no worse position now, when the TABC has failed to appeal the district court’s 'Rule 60(b) order, than they occupied during the past nearly twenty years while the injunction has lain unchallenged. The majority does not seem to quarrel with this statement.
Second, because “Illinois does not recognize any private right of action to contest such an enforcement decision by the Commission, it would not be sound to allow the distributors to challenge that decision indirectly.” Id. In the absence of this specific private right against the agency, Kendall-Jackson denied the distributors’ claim effectively to step into the shoes of the regulatory agency. Reinforcing that the court would have afforded standing only if Illinois law afforded them a claim against the Commission, the court later observes that the distributors could have gone into state court seeking an order requiring the Commission to appeal the féderal court injunction. If the distributors won, then “all issues will be presented for resolution on the merits.” Id. at 1000. ' If, however, the distributors were “unable to persuade a state court to direct [the Commission] to appeal, that will demonstrate how similar this situation is to Diamond.” Id.
The majority here cling to the court’s dictum acknowledging that in certain cases, third parties may challenge regulations ' enforced by public agencies. As Kendall-Jackson opines, “federal regulations may be enforced by private parties .:. by suits against private parties ... to the extent a statute or regulation creates a private right of action.”[1] Id, at 998. The majority believe this exception to Kendall-Jackson’s principal holding applies to TPSA because a statutory provision allows “[a]ny package store permittee” to sue for injury by “another .package-store permit-tee” for enforcement of code requirements. Tex. Alco: Bev.Code ANN. § 109.53. Allowing suits between competitors, however, is far different from waiving the State’s sovereign immunity -to allow a permittee to sue the Commission for affirmative enforcement'-of state law (or to .appeal the continuation of the instant injunction). Texas requires a clear legislative statement to effectuate a waiver of state sovereign immunity; this provision does not fill the bill. See Tex. Gov’t.Code Ann. § 311.034 (“[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.”) Put otherwise, the majority’s attempt to fit Texas law within the narrow ambit of Kendall-Jackson’s exception fails because a suit to enforce the code’s provisions against another private party is wholly different from a suit seeking Rule 60(b) relief from a federal court injunction, that binds only the Commission. Because TPSA isn’t bound by the injunction, it might even sue Fine Wine and Southern Wine under § 109.53 for “violating” the same local residency provision that was enjoined here! A state *746 coui’t might then have to decide whether to defy the federal court’s ruling. This hypothetical proves the point that TPSA’s indirect injury from the injunction is not redressable by this court because any judgment in TPSA’s favor cannot remove the injunction against the Commissioner.[2]
TPSA’s effort on appeal is nothing less than to substitute itself, although not bound by the Cooper injunction, for the state authorities who, for whatever reason, did not appeal the continuation of the injunction. This is an end-run around the State’s sovereign prerogative to “create and enforce a legal code.” Diamond, 476 U.S. at 65, 106 S.Ct. at 1705. Texas law does not authorize individuals to enforce the Alcoholic Beverage Code, in essence, against the State. A judgment by this court favoring TPSA neither relieves TPSA of any burden nor effectuates relief against the Commissioner. We lack jurisdiction to adjudicate this appeal.

. This dictum was distinguished by a recent 7th Circuit panel. Cabral v. City of Evansville, 759 F.3d 639, 644 (7th Cir.2014) ("West Side argues this dictum [quoted above]-provides it with standing. But a key element of that speculation is that the private party could bring a suit against the agency or governmental actor....").

, TPSA concedes that the injunction prevents the state Attorney General from performing his nondiscretionary duty to enforce the code when a party like TPSA brings a violation to his attention, Tex. Alco. Bev.Code Ann. § 109.53, but an injunction against the enforcement authority simply does not run against TPSA.