**Kenneth T. BOSLEY**

v.

**BALTIMORE COUNTY, MARYLAND.**

No. L–91–1290.

United States District Court,
D. Maryland.

Sept. 25, 1992.

Kenneth T. Bosley, pro se.

Arnold Jablon, Co. Atty., for Baltimore County, and Michael J. Moran, Asst. Co. Atty., Towson, Md., for defendant.

## MEMORANDUM

LEGG, District Judge.

Now before the Court are (i) defendant's motion for summary judgment, or alternatively for dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and (ii) plaintiff's motion for sanctions against Barbara Jones. For the reasons stated herein, this Court will, by separate order, GRANT defendant's motion and DENY plaintiff's motion.

## I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Because matters outside the pleadings are before the Court, the defendant's motion will be treated as one for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### A. *Facts*

This case arises under Maryland Agricultural Code §§ 2–501 to 2–516 which establish the Maryland Agricultural Land Preservation Foundation [1] (the "Foundation") and define the Foundation's functions and

---

1. The Foundation is governed and administered by a board of twelve trustees. They are the State Treasurer (ex officio), the Comptroller (ex officio), the Secretary (ex officio), and nine others who are at-large trustees appointed by the Governor. One at-large trustee is appointed as chairman by the Governor. Of the nine at-large trustees, five must be farmer representatives from different areas of the State. Three of these five farmer trustees are chosen from a list of nominees submitted by the Maryland Agricultural Commission, the Maryland Farm Bureau, and the Maryland State Grange, respectively. One of the other four at-large trustees must be a representative of the Office of Planning. Md. Agric.Code § 2–503.

procedures. The purpose of this statutory scheme is:

> to preserve agricultural land and woodland in order to: provide sources of agricultural products within the State for the citizens of the State; control the urban expansion which is consuming the agricultural land and woodland of the State; curb the spread of urban blight and deterioration; and protect agricultural land and woodland as open-space land.

Md.Agric.Code § 2–501. The Maryland statutory scheme sets out the procedures for formation of county preservation districts and sale to the Foundation of easements over district land.[2] Both the preservation district formation and sale of easement processes involve participation by the county council, county advisory bodies,[3] and the Foundation. The county council and the Foundation have unfettered discretion to accept or reject any recommendations to them throughout these two processes. Foundation approval is required before a county preservation district can be created and before the Foundation purchases an easement.

The ultimate goal of any landowner seeking inclusion in a county preservation district is the eventual sale to the Foundation of an easement over his land.[4] This easement is potentially very valuable because the Foundation is permitted to pay up to the difference between the fair market value of the land in its most profitable use, for example development, and the agricultural value of the land.[5] Md.Agric.Code § 2–511. The opportunity to sell an easement to the Foundation arises only after the county, with ultimate approval by the Foundation, has established a preservation district which includes the landowner's property.

An agricultural preservation district is created after the following steps have been taken, all of which require approval by both the county council and the Foundation. When the county council receives a landowner's petition for the establishment of an agricultural preservation district, it must refer the petition to both the agricultural preservation advisory board and the county planning and zoning authority for their recommendations. Each must advise the county council within 60 days as to whether or not the land meets the statutory requirements for inclusion in the program and whether or not the body recommends establishment of the district. Md. Agric.Code § 2–509(b)(2). If either body recommends approval, the county council must hold a public hearing on the petition. Md.Agric.Code § 2–509(b)(3). "Adequate notice of the hearing shall be given to all landowners in the proposed district...." Id.

Once the county council receives a recommendation it has 120 days to "render a decision as to whether or not the petition shall be recommended to the foundation for approval." Md.Agric.Code § 2–509(b)(4). The county council is not obligated to accept the recommendation of the county zoning authority or of the agricultural advisory board; it has unfettered discretion to recommend or reject each petition before it. The statute neither limits nor prescribes what factors the county council may consider in its evaluation of a petition. "If the county [council] recommends denial of the

---

2. Easements are purchased by the Foundation with funds from the Maryland Agricultural Land Preservation Fund (the "Fund"). The Fund contains moneys from state general and special fund appropriations and from governmental or private source grants or transfers. Md.Agric.Code § 2–505.

3. The county council of each county with agricultural land appoints an agricultural preservation advisory board consisting of five members, at least three of whom must be owner-operators of commercial farms who earn at least 50% of their income from farming. Md.Agric.Code § 2–504.1.

4. An easement restricts the use of the land and maintains its character as agricultural land or woodland. See Md.Agric.Code § 2–504(3). An easement may only be terminated pursuant to section 2–514 of the Maryland Agriculture Code. One of the limitations on terminating an agricultural land preservation easement is that it cannot be terminated until it has existed for at least 25 years. Md.Agric.Code § 2–514(b).

5. If the landowner offers to sell the easement for less than this difference, then the Foundation will pay the landowner's asking price.

petition, it shall so inform the foundation and the petitioners." *Id.*

After the county council recommends approval, the Foundation independently considers the application. Under the statute, the Foundation has broad discretion to accept or reject the county council's recommendation. Foundation approval is necessary for preservation district formation.

Once a parcel of farmland becomes part of a preservation district, a landowner has the opportunity to sell an easement to the Foundation. This offer must be made in writing and is subject to approval by the county council and then by the Foundation.[6] Md.Agric.Code § 2–510. The county council is obligated to receive the recommendation of the county agricultural preservation advisory board, but is not required to follow that recommendation. The advisory board must follow statutorily prescribed criteria and standards. The county council and the Foundation, however, have broad discretion in their decisions. The Foundation's ability to purchase easements is limited by the funds available to it for such purposes, so it is not guaranteed that all approved easements will eventually be purchased.

Conclusion Farms, Inc. ("Conclusion") is a family-owned corporation; its assets are a farm and its equipment. On August 30, 1987, a majority of Conclusion shareholders approved a resolution authorizing the corporation to "execute with the Maryland Agricultural Land Preservation Foundation pursuant to Agriculture Article of Section 2–509, Maryland Annotated Code, an agreement to maintain the land of Conclusion … in agricultural use and in an agricultural preservation district for 5 years." Compl. Exhibit 1. The resulting petition to the Baltimore County Council was a peti-

tion of the corporation, not any of its individual shareholders.

Prior to passage of Conclusion's resolution authorizing the petition, four family members who were minority shareholders of Conclusion filed, on August 1, 1986, a suit in state court alleging illegal actions by the shareholders controlling the corporation and asking for dissolution of the corporation. Kenneth T. Bosley ("Bosley"), plaintiff in the case before this Court, was one of the family members accused of illegal corporate actions in the case filed in Maryland state court.[7]

Conclusion's petition was referred to the Baltimore county preservation advisory board and the Baltimore zoning and planning authorities, as required by the statutory scheme. In a May 6, 1988 letter, the land preservation advisory board notified Conclusion that it would recommend establishment of a preservation district including Conclusion's land. Conclusion was notified that a public hearing was scheduled for May 12, 1988, and that the county council would "potentially approve" the petition on May 16, 1988. If approval was granted, Conclusion would be eligible to make an offer of an easement sale. The letter from Mr. Wayne C. McGinnis, chairman of the advisory board, to Conclusion warned, however, that "[b]ecause of the competitive nature of the easement purchase program, neither the County nor the State can assure you that your offer will be accepted or an offer made. Each offer will be evaluated at the appropriate time." Compl. Ex. 2. The county zoning authority, on May 6, 1988, also recommended Conclusion's petition for approval. Reply Br. of Def. to Pl.'s Answer to Def.'s Mot. for Summ. J. ("Reply"), Ex. 5.

Because the advisory board and the county zoning authority recommended Con-

6. In the case of easement purchases by the Foundation, a majority of the at-large trustees must approve, and the State Treasurer and Secretary must recommend, the landowner's offer before the Foundation can purchase the easement. Md.Agric.Code § 2–510(i).

7. On October 17, 1990, the Circuit Court for Baltimore County dissolved the corporation after making findings of illegality on the part of

Conclusion. *Daniel M. Bosley, Sr., et al. v. Conclusion Farms, Inc and Kenneth T. Bosley,* Case No. 86CSP–2690. This decision was affirmed by the Court of Special Appeals of Maryland on January 27, 1992. *Conclusion Farms, Inc. v. Daniel M. Bosley, Sr., et al.,* Case No. 638, September Term 1991. An application for writ of *certiorari* is presently pending before the Court of Appeals.

748

clusion for inclusion in the preservation district, the county council was required to hold a public hearing on Conclusion's petition. Bosley states in his complaint that this hearing was held on May 12, 1988 at 1:00 p.m. and that "there was no objection made by any citizen". Compl. at ¶ 6. Conclusion's petition was, however, removed from the county council's consideration at its May 16, 1988 meeting [8] upon the recommendation of Baltimore County Attorney Arnold Jablon, who was concerned that the pending litigation requesting involuntary dissolution of the corporation created a conflict as to who could authorize Conclusion's inclusion in the preservation district. *See* Reply, Ex. 1.

Plaintiff is a shareholder in Conclusion. He claims that his constitutional rights to procedural due process and equal protection were violated when Baltimore County Attorney, Arnold Jablon, removed from the consideration of the Baltimore County Council the petition filed by Conclusion to obtain approval of the creation of an agricultural preservation district which would include the farm property.[9] Bosley claims he was deprived of the increase in value of his shares, and/or of dividends on the

shares, that would have resulted from preservation status and subsequent sale of an easement by Conclusion to the Foundation.[10] Bosley Dep. at 46. He asserts that this lost increase in value constitutes a taking of his property without due process of law. Compl. at ¶ 1.

Bosley also alleges that he was denied equal protection of the laws because Conclusion was the only farm to be denied land preservation status by the Baltimore County Council. Compl. at ¶ 24.

Defendant answers that plaintiff has not been deprived of any property right cognizable under the Fourteenth Amendment. Defendant further asserts that if a cognizable property right has been infringed, plaintiff, as an individual stockholder, lacks standing to sue because the property interest at issue belonged to the corporation and not its individual stockholders.[11]

For the reasons stated below, this court will GRANT defendant's motion for summary judgment.

#### B. *Discussion*

Summary judgment must be granted where "the pleadings, depositions, answers

**8.** The record does not clearly reveal who ultimately pulled Conclusion's petition. There was correspondence between Mr. Jablon and Robert W. Sheesley, Director of the Department of Environmental Protection and Resource Management. *See* Reply Ex. 1, 2. There were also letters from Barbara Jones and the attorney for the plaintiffs in the state involuntary dissolution proceedings to Dale Volz, Chairman of the County Council, and to Frank C. Robey, Jr., County Administrative Officer, respectively. *See* Reply Ex. 3, 4. The identity of the person *who pulled Conclusion's petition does not impact the Court's analysis of defendant's motion.*

**9.** Bosley's complaint is poorly drafted and confusing. It is not broken into counts and contains a number of diffuse, unrelated allegations which were indiscriminately spread throughout the complaint. Among these allegations is paragraph 20 which alleges violation of plaintiff's due process rights under Rule B1 of the Maryland Annotated Code, Administrative Agencies, "in that the Baltimore County Agricultural Land Preservation Board is set up as an advisory one and should have final authority in matters brought before the agency and in this case of Conclusion Farms, the Board's action has been ignored." Compl. at ¶ 20.

The Court finds that Bosley has abandoned this argument by failing to contest it in his opposition to defendant's motion for summary judgment. Even if plaintiff had not abandoned his argument, Maryland Rule B1 requires special authorization by statute before a court can review a final action of an administrative agency. Bosley fails to point to such a statute. If this allegation is alternatively read as asserting a federal constitutional procedural due process claim, it must be rejected. Such an argument lacks any merit. If the Court were to allow *plaintiff's contention, a legislative body would* be required to accept any recommendation made by an advisory body with expertise in the relevant area.

**10.** In his deposition, Bosley claims that an appraiser told Conclusion that sale of a development easement to the County after preservation status had been granted would bring approximately $500,000 to the corporation. Bosley Dep. at 45.

**11.** The Court interprets the December 20, 1991 letter accompanying defendant's motion for summary judgment as abandoning the statute of limitations defense as a ground for summary judgment in favor of defendants.

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The constitutional requirement of procedural due process applies only to an interest within the Fourteenth Amendment's protection of liberty and property. *See Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Although the property interests protected by procedural due process "extend well beyond actual ownership of real estate, chattels, or money," *Roth,* 408 U.S. at 572, 92 S.Ct. at 2706–07, the Supreme Court has stated that "[t]o have a property interest in a benefit, a person ... must have more than a unilateral expectation of it." 408 U.S. at 577, 92 S.Ct. at 2709. "Property interests are not created by the Constitution, 'they are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709).

■ Defendant is entitled to summary judgment because there is a complete absence of evidence that plaintiff was denied his constitutional rights to due process and equal protection as a result of the Baltimore County Council's handling of Conclusion's petition. Plaintiff fails to show that the procedures for establishment of preservation districts and for sale of easements create a legitimate entitlement to, as opposed to a unilateral expectation of, the sale of an easement. The final approval processes in both instances are ones in which both the county council and the Foundation have broad discretion to deny

petitions. Plaintiff, therefore, fails to prove that Conclusion had a property interest entitled to the protection of procedural due process.[12] Because Conclusion has no constitutionally cognizable property interest, there can be no due process violation. Furthermore, because Conclusion had no more than a unilateral expectation, Bosley cannot claim anything more than a unilateral expectation for himself. He therefore fails to show that he possessed a constitutionally cognizable property interest.

This case is remarkably similar to a recent case in which the Fifth Circuit affirmed the district court's dismissal for failure to state a claim, when plaintiff alleged deprivation of property without procedural due process as a result of the local municipal utility district's refusal to annex him into the district.[13] *See Mahone v. Addicks Util. Dist. of Harris County,* 836 F.2d 921 (5th Cir.1988). The plaintiff in that case, Mahone, alleged a conspiracy between the district, its employees, and developers whose properties had already been annexed. 836 F.2d at 924. Like some of Bosley's allegations in the case *sub judice,* Mahone alleged that certain developers used their "close relationship" with district employees to have Mahone's requests for annexation denied. *Id.* at 925. Mahone claimed that a constitutionally cognizable property interest was created by the following provision of the Texas Water Code:

> The powers and duties conferred on [a municipal utility] district are granted subject to the policy of the state to encourage the development and use of integrated area-wide waste collection, treatment, and disposal systems to serve the waste disposal needs of the citizens of the state, it being an objective of the policy to avoid the economic burden to

---

**12.** Even if plaintiff could show that Conclusion had a constitutionally protected property interest, it was given a hearing before it was deprived of its alleged property interest. A prior hearing is the usual procedural due process requirement. *See Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493; *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971); *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971).

**13.** Mahone desired annexation because annexation was a prerequisite to obtaining municipal utility services, including fresh water and waste water, from the utility district. Mahone was preparing his land for development. *Mahone v. Addicks Util. Dist. of Harris County,* 836 F.2d 921, 924 (5th Cir.1988).

the people and the impact on the quality of the water in the state which result from the construction and operation of numerous small waste collection, treatment, and disposal facilities to serve an area when an integrated area-wide waste collection, treatment, and disposal system for the area can be reasonably provided.

Texas Water Code § 54.233. Mahone claimed that the statute required all municipal utility districts to approve the applications of all who sought annexation by the district.

The Fifth Circuit found that Mahone had no constitutionally protected property interest. Mahone's contention, like Bosley's contention in this case, would require the local district to annex all applicants as soon as they applied. *Id.* at 924. Texas statutory provisions, however, did not support this argument, reasoned the Fifth Circuit. The Texas statute in *Mahone* contained "guiding principles", not specific guidelines, for decision making, thus precluding the conclusion that all applications must be granted. The court concluded that the utility district had discretion in its consideration of applications. In the case at bar, the Maryland statute does not even contain guiding principles of the type found in the Texas statute. The Baltimore County Council had broad discretion to accept or reject the recommendations of the advisory bodies. Therefore, as a matter of law, Bosley cannot prove that the Maryland statute created a constitutionally protected property interest.

Even assuming, *arguendo*, that Bosley could show that Conclusion had a constitutionally cognizable property interest, he lacks standing. Bosley bases his allegation of injury on a derivative harm, resulting from harm to the corporation. Therefore, if he has standing it must be as a share-

holder vindicating the rights of the corporation.[14]

■ There are two general requirements for standing: (i) an Article III case or controversy, and (ii) prudential requirements. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 470–72, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982); *Franchise Tax Board of Calif. v. Alcon Aluminum Ltd.*, 493 U.S. 331, 334–35, 110 S.Ct. 661, 664, 107 L.Ed.2d 696 (1990). The Article III case or controversy requirement means that "[t]he plaintiff must show a distinct and palpable injury to himself; that this injury is caused by the challenged activity; and that this injury is apt to be redressed by a remedy that the court is prepared to give." 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.4; *see also Diamond v. Charles*, 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986); *Allen v. Wright*, 468 U.S. 737, 750–52, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, *reh'g denied*, 468 U.S. 1250, 105 S.Ct. 51, 52, 82 L.Ed.2d 942 (1984).

■ Bosley fails to establish an Article III case or controversy. His alleged injury is lost increase in the value and dividends of his stock. Plaintiff fails to prove that his injury was the result of the Baltimore County Council's rejection of Conclusion's petition. Approval of the establishment of an agricultural preservation district is just one in many steps required before Conclusion could have sold an easement to the Foundation. Approval by the county council would not have assured Conclusion the sale of an easement. Even if Conclusion had eventually sold an easement, there is no guarantee that Bosley would have received increased dividends, because the declaration of dividends by the corporation is discretionary. Bosley, therefore, suffered no direct, palpable injury which was caused

---

**14.** Plaintiff, in his answer to defendant's motion for summary judgment, asks the Court to pierce the corporate veil and therefore allow him to sue. The legal theory of piercing the corporate veil is unrelated to standing questions. The one case cited by plaintiff to support his proposition, *United States v. Milwaukee Refrigerator Transit*

*Co.*, 142 F. 247 (E.D.Wis.1905), is completely unrelated to standing. That case addresses two corporations with identical shareholders and whether one corporation can be considered a dummy for the other. It has no application to the case *sub judice.*

by Baltimore County Council's actions. "The injury must be ... 'distinct and palpable', and not 'abstract' or 'conjectural' or 'hypothetical'." *Allen v. Wright*, 468 U.S. at 751, 104 S.Ct. at 3324–25 (citations omitted). The injury Bosley alleges is conjectural and hypothetical, not distinct and palpable.

The prudential requirements for standing require that "the plaintiff's complaint fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question,'" *Valley Forge*, 454 U.S. at 475, 102 S.Ct. at 760 (quoting *Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)), and that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." *Valley Forge*, 454 U.S. at 474, 102 S.Ct. at 760 (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)); *see also Franchise Tax Bd. of California v. Alcan Aluminium*, 493 U.S. 331, 335, 110 S.Ct. 661, 665, 107 L.Ed.2d 696, *reh'g denied*, 494 U.S. 1012, 110 S.Ct. 1311, 108 L.Ed.2d 488 (1990). Bosley's complaint does not fall within the zone of interests to be protected by procedural due process because he fails to show that he possessed any constitutionally cognizable property interest; he only possessed a unilateral expectation that Conclusion would eventually sell an easement to the Foundation and that the value of his Conclusion shares, and/or the amount of his dividends, would increase. Furthermore, Bosley's claim is in essence based upon the legal rights and interests of Conclusion, not upon Bosley's own rights and interests. Therefore, prudential considerations also support a finding that Bosley lacks standing.

■ A stockholder generally has standing to sue to vindicate the rights of the corporation only in a derivative capacity. Before being allowed to sue in a derivative capacity, a plaintiff stockholder must show that he is asserting the rights of the corporation because the corporation refuses to vindicate its own rights. *See* Fed.R.Civ.P.

23.1. Bosley does not allege any efforts on his part to force Conclusion to sue the Baltimore County Council. Furthermore, "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders ... in enforcing the right of the corporation." Fed.R.Civ.P. 23.1. There is no doubt in this case that Bosley does not represent the interests of all the shareholders. It was the minority shareholders who instituted a state suit to dissolve Conclusion precisely because Bosley was running the corporation in an illegal and abusive manner, contrary to their interests. It was the same minority shareholders who wrote to Baltimore County officials asking that the corporation's petition be denied. Therefore, defendant is entitled to summary judgment on the due process claims.

■ Defendant is similarly entitled to summary judgment on plaintiff's equal protection claim because plaintiff fails to plead, or otherwise present, any facts supporting his claim. Although it is not necessary to show a deprivation of a property interest to establish an equal protection claim, *Mahone*, 836 F.2d at 931, it is necessary for the plaintiff to show that he has been "classified". Usually this classification is set out in the statute under which the state acts. The Maryland statute makes no classifications.

■ A statute which makes no facial classification may, however, still violate equal protection if it is applied in a manner which denies equal treatment to persons similarly situated. *See City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (equal protection requires that those similarly situated be treated similarly); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (equal protection requires that laws be executed so as not to deny equality). If a statute, facially or in its application, treats similarly situated people differently, the differential treatment will be upheld if it is rationally related to a legitimate state interest. *Cleburne*, 473 U.S. at 439–40, 105 S.Ct. at 3254 (rational

relation test appropriate in equal protection cases where classification based on something other than race).

■ Plaintiff completely fails to create an issue of material fact regarding the Baltimore County Council's denial of similar treatment to those similarly situated. Plaintiff fails to show that Conclusion was similarly situated to anyone who received different treatment than it. At the time of its application, Conclusion was subject to pending dissolution proceedings which distinguished it from other agricultural property owners whose petitions were before the council. Even if plaintiff could show that Conclusion is similarly situated, the council's action is rationally related to a legitimate state interest.[15] It is a legitimate state interest to keep the county from becoming entangled in an applicant's legal battles.[16] *See* Reply, Ex. 1, 2. "Pulling" Conclusion's petition, which this Court equates with its rejection, is rationally related to the state interest in this case. Therefore, defendant's motion for summary judgment will be GRANTED.[17]

## II. PLAINTIFF'S MOTION

Plaintiff's motion for sanctions against Barbara Jones sets forth no reasoning or authority to support it. The motion therefore violates Local Rule 105.1. Furthermore, as defendant notes, this Court has no inherent authority over Ms. Jones because she is not a party to this action. Plaintiff's motion will therefore be DENIED in a separate order.

---

**15.** This Court finds that the Baltimore County Council was acting in a "legislative" capacity, and that the rational relation test therefore controls the equal protection analysis in this case. *See Mahone,* 836 F.2d at 935.

**16.** The county's concern was well-founded, as Conclusion became subject to involuntary disso-

lution proceedings in the Circuit Court for Baltimore County on October 17, *1990.*

**17.** The Court notes that Bosley similarly lacks standing to sue to vindicate Conclusion's equal protection rights.