MEMORANDUM *
We affirm the district court’s dismissal of appellants’ denial of access to the courts claim and the district court’s summary judgment of appellants’ (1) claims of deprivation of equal protection and (2) claim of an unreasonable seizure.[1]
*430 I
Appellants argue that the district court erred in dismissing their denial of access to courts claim. The Supreme Court recently clarified the nature of the denial of access claim. See Christopher v. Harbury, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). In Christopher, the Supreme Court distinguishes between forward-looking and backward-looking claims. Id. at 414. The Supreme Court notes that in order to state a claim for backward-looking denial of access, a party must identify in the complaint (1) a “nonfrivolous,” “arguable” underlying claim, whether anticipated or lost; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Id. at 415.
The Court in Christopher does not establish a new rule, but rather articulates the common elements of the backward-looking denial of access claim as recognized by various circuits. See id. at 414-16. Our circuit further requires that a party, in order to prevail on a denial of access claim, “demonstrate that the defendant’s cover-up violated their right of access to the courts by rendering any available state court remedy ineffective.” Delew v. Wagner, 143 F.3d 1219, 1223-224 (9th Cir.1998).
Here, the bankruptcy court proceedings rendered appellants’ wrongful death action ineffective. We can never know what would have happened if the bankruptcy court case had not precluded the state lawsuit. Because appellants can not demonstrate that the defendants’ alleged cover-up rendered any state court remedy ineffective, the district court properly dismissed their denial of access to courts claim.
II
Appellants appeal the district court’s grant of summary judgment against their claims that: (1) the defendants deprived the appellants of equal protection by failing to investigate the death of Scott Neaves; and (2) the polygraph operator deprived the appellants of equal protection by lying about the results of the babysitter’s polygraph test.
Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Discriminatory intent “implies more than intent as volition or intent as awareness of consequences. It implied that the decision maker ... selected or reaffirmed a particular course of action at least in part ‘because of,’ not merely ‘in spite of,’ its adverse effects upon an identifiable group.” Personnel Adm’r of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., — U.S. —, 123 S.Ct. 1389, 1394, 155 L.Ed.2d 349 (2003). Here, the district court held that appellants were an identifiable class, but that appellants had not shown that the defendants acted with an intent or purpose to discriminate against them.
Appellants argue that when the defendants denied them police services, the defendants engaged in intended conduct with the inevitable or foreseeable consequence that the appellants would be denied equal protection. In certain instances, a viola *431 tion of equal protection can occur when an officer acts with a discriminatory intent in refusing to investigate a particular case. See e.g., Estate of Macias v. Ihde, 219 F.3d 1018, 1028 (9th Cir.2000); Navarro v. Block, 72 F.3d 712, 716-17 (9th Cir.1995). In these instances, however, it is the victims themselves, not a relative or another third party, who have alleged a violation of their equal protection rights based on discriminatory police conduct. See e.g., Estate of Macias, 219 F.3d at 1028; Navarro, 72 F.3d at 716. In addition, our refusal to investigate cases have involved findings of discriminatory intent based upon membership in a particular class. See e.g., Estate of Macias, 219 F.3d at 1020, 1028 (involving discrimination against a person based on her status as a woman and as a domestic violence victim); Navarro, 72 F.3d at 717 (involving discrimination against a member of a class composed of domestic violence victims). Here, appellants may have been treated differently, but they have not shown discriminatory intent.
Appellants argue that defendants acted with discriminatory intent by citing three other eases involving the deaths of young children that occurred under circumstances which are arguably similar to the circumstances surrounding Scott Neaves’ death and which were investigated differently. It is undisputed, however, that any improper conduct by defendants was motivated by a desire to protect the babysitter, rather than by an intention to discriminate against the appellants because of their membership in a class. Looking at the evidence in the light most favorable to the appellants, the defendants did not fail to provide police services “because of’ appellants’ membership in a certain class. Rather, the defendants acted to protect the babysitter, “in spite of’ any adverse effects on the appellants. Absent evidence of discriminatory intent, appellants’ equal protection claims fail.[2] The district court’s decision is correct.
Ill
Appellant Makenzie Neaves appeals the district court’s grant of summary judgment against Makenzie’s unlawful seizure claim. The grant of summary judgment was based on defendants’ qualified immunity.
In order to determine whether the defendants are entitled to qualified immunity, we first determine whether the facts alleged, taken in the light most favorable to the appellants, show that the defendants’ conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If a violation of a constitutional right is shown, then we determine whether the right was so clearly established at the time that a reasonable officer would have known that his or her conduct was unlawful. Id. at 201-02.
In order to determine whether a constitutional violation has occurred, we determine whether there was an unlawful seizure. Officials may remove a child without a warrant from parental custody when the official has a “reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.”[3] Wallis v. *432 Spencer, 202 F.3d 1126, 1138 (9th Cir.2000).
The defendants had reasonable cause to believe Makenzie was in imminent danger. Makenzie’s brother, Scott, had sustained life-threatening injuries potentially caused by abuse. The defendants did not know at the time who was responsible for Scott’s injuries. In response, the defendants temporarily separated Makenzie from both her parents and her babysitter for the child’s protection.
Appellants claim that the scope of intrusion involved in seizing Makenzie was excessive in that Makenzie could have been placed with her father, who was identified as a “non-suspect” in the child abuse investigation. The officers knew, however, that Makenzie’s parents were married and that placing Makenzie with her father would not necessarily remove Makenzie from the risk of her mother, who was a suspect in the child abuse investigation.
In addition, the brief period during which Makenzie was separated distinguishes her seizure from an unlawful seizure. Cf. Wallis, 202 F.3d at 1131 (holding summary judgment improper where, on the basis of a fantastical allegation of a planned satanic ritual alleged by an estranged relative hospitalized in a psychiatric facility, children were taken away from their parents for two and one-half months, during which time the children underwent intrusive anal and vaginal physical examinations). A brief separation of a few days from both parents, when the parents are married and presumably living together and when one parent is suspected of cornmitting child abuse, is not excessively intrusive.
The district court properly determined that there was no violation of Makenzie’s constitutional rights.[4] Defendants had reasonable cause to believe that Makenzie was in imminent danger of serious bodily injury and the scope of the intrusion caused by temporarily separating Makenzie from her parents was reasonably necessary to avert that danger. We affirm the district court’s grant of summary judgment against Makenzie’s claim of unlawful seizure on the basis of qualified immunity.
AFFIRMED

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

. The facts are not recited here as the parties *430 are familiar with the facts of this case.

. We also note that the Neaves’ have no "judicially cognizable interest” in having the babysitter prosecuted. See Diamond v. Charles, 476 U.S. 54, 64, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986).

. California Welfare and Institutions Code § 305 contains similar language. Section 305 proves that any peace officer may, without warrant, take into temporary custody a minor "[wjhen the officer has reasonable cause for believing that the minor ... is in *432 immediate danger of physical or sexual abuse, or the physical environment ... poses an immediate threat to the child’s health or safety-”

. The district court also stated that, even if Makenzie’s constitutional rights were violated, the officers did not violate clearly established rights because a reasonable officer would not have known that his or her conduct was unlawful. We agree.