CHIEF JUSTICE RICE, dissenting.
 

 ¶39 The majority concludes that, when the General Assembly gave foster parents the unconditional right to intervene in dependency and neglect proceedings in section 19-3-507(5)(a), C.R.S. (2017), it intended for that right to extend only to the trial-level proceedings but not on appeal. I cannot agree. The majority's position is inconsistent with the plain language of section 19-3-507(5)(a) and our holding in
 
 A.M. v. A.C.
 
 ,
 
 2013 CO 16
 
 ,
 
 296 P.3d 1026
 
 , and destroys the procedural mechanism of C.R.C.P. 24(a)(1). The majority holds that, "although section 19-3-507(5)(a) permits foster parents to intervene in dependency and neglect proceedings following adjudication, foster parents do not have a legally protected interest in the outcome of termination proceedings, and section 19-3-507(5)(a) does not automatically confer standing to them to appeal...." Maj. op. ¶ 2. I recognize that standing is a jurisdictional prerequisite to any appeal,
 
 see
 

 O'Bryant v. Pub. Util. Comm'n
 
 ,
 
 778 P.2d 648
 
 , 652 (Colo. 1989), but section 19-3-507(5)(a) satisfies that requirement. That is, just as the statute permits foster parents to intervene at the trial-level dependency and neglect proceedings and participate fully without satisfying Colorado's traditional standing requirements, it also confers standing on the foster parents to appeal a juvenile court's order denying a motion to terminate a parent-child legal relationship regardless of whether the State or the guardian ad litem ("GAL") appeals. Accordingly, I would hold that parties who enter a lawsuit pursuant to an unconditional statutory right to intervene-like the foster parents here-need not prove a direct interest in the litigation to participate fully at the trial level or on appeal because the legislature has already declared their interest sufficient for standing purposes. For these reasons, I respectfully dissent.
 

 I. Section 19-3-507(5)(a) Confers Standing Upon Qualifying Parties at all Stages of Litigation
 

 ¶40 First, the plain language of section 19-3-507(5)(a), as we interpreted it in
 
 A.M.
 
 , expresses the General Assembly's intent that qualifying foster parents be permitted to participate fully at all stages of litigation. The majority concludes that, because section 19-3-507(5)(a) does not include specific language conferring the right to appeal, the intervening foster parents do not have that right. That logic is backwards and conflicts with our interpretation of section 19-3-507(5)(a) in
 
 A.M.
 
 A statutory right to intervene is full and unlimited
 
 unless
 
 it is specifically limited by statute.
 
 See
 

 A.M.
 
 , ¶ 20,
 
 296 P.3d at 1033
 
 . In
 
 A.M.
 
 -which the majority does not overrule-we held that, because section 19-3-507(5)(a)"does not contain any explicit limit to the rights of intervenors, nor does it limit the substance of intervenor participation,"
 
 Id.
 
 at ¶ 17,
 
 296 P.3d at 1032
 
 , the intervening foster parents "are afforded the same degree of participation as all other parties, and such participation is not limited to the dispositional hearing."
 
 Id.
 
 at ¶ 20,
 
 296 P.3d at 1033
 
 . We held that the trial court "did not err in affording the foster parents full party status at the termination hearing" and that, "[a]s intervenors, the foster parents were properly permitted to make opening statements, cross-examine witnesses, introduce evidence, make evidentiary objections, and give closing argument."
 
 Id.
 
 at ¶ 39,
 
 296 P.3d at 1037-38
 
 . We reasoned that, had the General Assembly intended to prevent foster parents from fully participating in trial-level dependency and neglect proceedings, it would have limited their rights to those granted in section 19-3-502(7), which allows foster parents to participate in dependency and neglect proceedings only as non-party witnesses or observers.
 
 Id.
 
 at ¶ 25,
 
 296 P.3d at 1034
 
 . Instead, we recognized that the General Assembly granted the
 additional right of intervention to foster parents who have the child in their care for more than three months and have knowledge concerning the care and protection of the child, meaning that qualifying foster parents who intervene pursuant to section 19-3-507(5)(a) obtain full party status.
 
 Id.
 
 at ¶ 39,
 
 296 P.3d at 1037-38
 
 . Notably, our conclusion did not turn on whether the foster parents in
 
 A.M.
 
 had standing. To the contrary, our opinion implies that section 19-3-507(5)(a) confers standing upon qualifying individuals, allowing them to intervene at the trial level and participate fully without meeting traditional standing requirements.
 

 ¶41 The same reasoning that allowed us to conclude that the foster parents in
 
 A.M.
 
 could participate fully in the trial proceedings without meeting the traditional standing requirements applies to the foster parents' ability to appeal here. I would hold that, by granting the foster parents in this case the unconditional right to intervene, the General Assembly declares their interest sufficient for standing purposes both at the trial level and on appeal. The General Assembly does not explain in section 19-3-507(5)(a) its reasons for granting foster parents an unconditional right to intervene, but its decision to do so is instructive. Section 19-3-507(5)(a) gives qualifying foster parents the autonomy to intervene, with or without representation, on their own initiative and without permission from the State or the GAL. This suggests that the General Assembly believed that foster parents who have had the child in their care for more than three months have a legitimate role to play in the termination proceedings separate from the interests represented by the State and the GAL. The majority admits that, as we explained in
 
 A.M.
 
 , "the State has a significant interest in promoting the welfare of children and ensuring that termination proceedings are accurate and just, and that this interest is best advanced by giving consideration to all relevant evidence, whatever the source, including foster parents." Maj. op. ¶ 29. According to the majority, however, that interest ends with the trial court's decision regarding termination. I would hold that the State's interest in obtaining a just result in termination hearings continues throughout all stages of the litigation and so too does the foster parents' right to participate. This is a logical extension of our holding in
 
 A.M.
 
 Just as qualifying foster parent intervenors have the unconditional statutory right to participate without limitation in trial-level dependency and neglect proceedings, so too may they appeal the result of those proceedings.
 

 ¶42 Additionally, the majority suggests that, because the GAL is statutorily obligated to advocate for the child's best interests at all stages of the litigation, "we need not confer standing to foster parents here to assert the rights of the child." Maj. op. ¶ 36. But that is not our decision to make. In addition to providing statutory duties for GALs, the General Assembly chose to confer standing on individuals who meet the requirements of section 19-3-507(5)(a) so that they may participate in all stages of dependency and neglect proceedings. We may not second-guess that decision.
 

 ¶43 The majority also relies on
 
 Diamond v. Charles
 
 ,
 
 476 U.S. 54
 
 ,
 
 106 S.Ct. 1697
 
 ,
 
 90 L.Ed.2d 48
 
 (1986), for the proposition that intervenors must meet traditional standing requirements to appeal. Maj. op. ¶ 19 (quoting
 
 Diamond
 
 ,
 
 476 U.S. at 68
 
 ,
 
 106 S.Ct. 1697
 
 ) ("[Petitioner's] status as an intervenor below, whether permissive or as of right, does not confer standing sufficient to keep the case alive in the absence of the State on this appeal."). That reliance is misplaced because
 
 Diamond
 
 did not involve litigants intervening pursuant to an unconditional statutory right.
 
 Diamond
 
 ,
 
 476 U.S. at 68
 
 ,
 
 106 S.Ct. 1697
 
 (discussing F.R.C.P. 24(a)(2) in its holding that the intervenor-whether intervening permissively or as of right-could not appeal without demonstrating Art. III standing). F.R.C.P. 24(a)(2) permits a party to intervene only if they can demonstrate that they claim an "interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." The language of F.R.C.P. 24(a)(2) resembles the requirements of Article III standing.
 
 [1]
 
 As
 a result, the U.S. Supreme Court has held that a litigant seeking to intervene as of right under Rule 24(a)(2)"must meet the [standing] requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff."
 
 Town of Chester, N.Y. v. Laroe Estates, Inc.
 
 , --- U.S. ----,
 
 137 S.Ct. 1645
 
 , 1648,
 
 198 L.Ed.2d 64
 
 (2017). Applying similar reasoning,
 
 Diamond
 
 requires litigants who intervene in the absence of a statutory grant to demonstrate Article III standing to appeal.
 

 ¶44 The majority assumes without explanation that parties intervening as a matter of right pursuant to C.R.C.P. 24(a)(1), as the foster parents did here, must satisfy Colorado's traditional requirements for standing in order to appeal. Unlike what the U.S. Supreme Court has done with F.R.C.P. 24(a)(2) -requiring Article III standing to enter the case at the trial level and to appeal
 
 [2]
 
 -the majority splits the baby, requiring intervenors to demonstrate standing to appeal but not to appear before the trial court. That holding is unprecedented. Neither this court nor the U.S. Supreme Court has held that parties with an unconditional statutory right to intervene must satisfy the traditional standing requirements at either the trial court or on appeal. To the contrary, such a requirement renders C.R.C.P. 24(a)(1) moot and prevents the General Assembly from conferring the right to intervene on parties it considers to have a legitimate stake in a case. The majority treats the foster parent intervenors here as though they intervened under C.R.C.P. 24(a)(2) and must continually prove their stake in the case. A right to intervene pursuant to statute is different in kind and should be treated differently than a right to intervene under C.R.C.P. 24(a)(2). In the latter circumstance, a litigant proves to the court that they deserve to be a party to a case; in the former circumstance, the General Assembly determines that a litigant deserves to be a party to a case. Requiring all intervenors to meet Colorado's standing requirements on appeal, as the majority does, renders C.R.C.P. 24(a)(1) and (a)(2) identical procedural mechanisms. I would hold that intervenors entering a case pursuant to C.R.C.P. 24(a)(1) have standing to participate fully at trial and on appeal because the legislature has declared their interest sufficient for standing purposes.
 

 II. Foster Parents Satisfy Standing Requirements
 

 ¶45 Finally, even assuming that section 19-3-507(5)(a) does not confer standing on the foster parents such that they must demonstrate that they have (1) suffered an injury in fact (2) to a legally protected interest, I would agree with the majority of the court of appeals which determined that the foster parents had standing to appeal the denial of the GAL's motion. The foster parents suffered an injury in fact "inasmuch as they were arguably positioned to adopt the child in the event the mother's parental rights had been terminated."
 
 People in Interest of C.W.B., Jr.
 
 ,
 
 2017 COA 68
 
 , ¶ 14, ---P.3d ----. Further, that injury was to a legally protected interest because, pursuant to our decision in
 
 A.M.
 
 , foster parents who meet section 19-3-507(5)(a)'s preconditions have "a right to represent the best interests of the child, and therefore a stake in the outcome of the controversy."
 
 C.W.B., Jr.
 
 , ¶¶ 15, 17.
 

 ¶46 For the foregoing reasons, I respectfully dissent.
 

 I am authorized to state that JUSTICE COATS joins in this dissent.
 

 Colorado's Rule 24(a)(2) is identical to the federal rule.
 

 See
 

 Town of Chester
 
 ,
 
 137 S.Ct. at 1648
 
 (holding that a litigant seeking to intervene in the trial court under Rule 24(a)(2)"must meet the [standing] requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff) and
 
 United States v. Windsor
 
 ,
 
 570 U.S. 744
 
 ,
 
 133 S.Ct. 2675
 
 , 2688,
 
 186 L.Ed.2d 808
 
 (2013) (holding that a party that intervened pursuant to F.R.C.P. 24(a)(2) could appeal because it met Article III's standing requirements).